## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

## COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983

Action Number __2:24-CV-00460__
(To be supplied by the Clerk, U.S. District Court)

Please fill out this complaint form completely. The Court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed. Please print/write legibly or type.

## I.    PARTIES

A.    Plaintiff:

1.    (a) __Marcus Ganzie__      (b) __1041258__
        (Name)                              (Inmate number)
    Greensville Corr. Center.
    (c) __901 Corrections Way__
        (Address)

    __Jarratt, Virginia 23870__

**Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release. If plaintiff fails to keep the Clerk informed of such changes, this action may be dismissed.**

**Plaintiff is advised that only persons acting under the color of state law are proper defendants under Section 1983. The Commonwealth of Virginia is immune under the Eleventh Amendment. Private parties such as attorneys and other inmates may not be sued under Section 1983. In addition, liability under Section 1983 requires personal action by the defendant that caused you harm. Normally, the Director of the Department of Corrections, wardens, and sheriffs are not liable under Section 1983 when a claim against them rests solely on the fact that they supervise persons who may have violated your rights. In addition, prisons, jails, and departments within an institution are not persons under Section 1983.**

B.    Defendant(s):

1.    (a) __Governor Glen Youngkin, et.al.__   (b) __Governor__
        (Name)                                          (Title/Job Description)
    Patrick Henry Bldg. 3rd
    (c) __1111 E. Broad St.    Fl.__
        (Address)

    __Richmond, V.A. 23219-1934__

2

2.  (a) _See Attached_ (b) _____
       (Name)                                    (Title/Job Description)

    (c) _____
        (Address)

    _____

3.  (a) _See Attached_ (b) _____
       (Name)                                    (Title/Job Description)

    (c) _____
        (Address)

    _____

If there are additional defendants, please list them on a separate sheet of paper. Provide all identifying information for each defendant named.

**Plaintiff MUST provide a physical address for defendant(s) in order for the Court to serve the complaint. If plaintiff does not provide a physical address for a defendant, that person may be dismissed as a party to this action.**

## II. PREVIOUS LAWSUITS

A.  Have you ever begun other lawsuits in any state or federal court relating to your imprisonment?  Yes [ ✓ ]  No [ ]

B.  If your answer to "A" is Yes: You must describe any lawsuit, whether currently pending or closed, in the space below. If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.

1.  Parties to previous lawsuit:

    Plaintiff(s) _Marcus Ganie_

    Defendant(s) _Warden Ponton, et al.,_ _____

    _____

2.  Court (if federal court, name the district; if state court, name the county):

    _United States District Court for the Eastern District._

3.  Date lawsuit filed: _May 19, 2015_

4.  Docket number: _2:14-CV-350_

3

Cont.

## II Previous Lawsuits

1)        Parties

Marcus Ganzie , Plaintiff

Major Greenfield , Defendant.

2)   Court

United States District Court Western District

3)     Date

     Unsure

4)    Docket No.

     7:02 - CV- 0716

5)     Judge

6)      Unsure

7)    Disposition

     Settled , unsure (Aronè 2006)

1)      Parties

Marcus Ganzie , Plaintiff

Sgt. Barton et. al , Defendants

     Court

2) United States District Court Western District

     Date

3)     Unsure

     Docket No.

4)     7:02 - CV-0716

     Judge

5)     Unsure

6)      Disposition

7) Settled , unsure (Aronè 2005, 2006)

5.    Name of Judge to whom case was assigned: _Rebecca Beach Smith_

_____

6.    Disposition (Was case dismissed? Appealed? Is it still pending? What relief was granted, if any?) : _The Court Granded Defendants Motion to Dismiss_ _May 19, 2015  W/o Prejudice_

## III.    GRIEVANCE PROCEDURE

A.    At what institution did the events concerning your current complaint take place: _____
      _Greensville Corr. / Parole Board_

B.    Does the institution listed in "A" have a grievance procedure?  Yes [ ✓ ]  No [   ]

C.    If your answer to "B" is Yes:

      1.    Did you file a grievance based on this complaint?  Yes [ ✓ ]  No [   ]

      2.    If so, where and when: _Appeal to Parole Board (See Attached)_

      3.    What was the result? _Denied  (See Attached)_

      4.    Did you appeal?  Yes [ ✓ ]  No [   ]

      5.    Result of appeal: _SEE Attached_

D.    If there was no prison grievance procedure in the institution, did you complain to the prison authorities?  Yes [   ]  No [   ]

      If your answer is Yes, what steps did you take? _(SEE Attached)_

E.    If your answer is No, explain why you did not submit your complaint to the prison authorities:

_____

_____

## IV.    STATEMENT OF THE CLAIM

State here the facts of your case.  Describe how each defendant is involved and how you were harmed by their action.  Also include the dates, places of events, and constitutional amendments you allege were violated.

If you intend to allege several related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets if necessary.

SEE Attached

## V.    RELIEF

I understand that in a Section 1983 action the Court cannot change my sentence, release me from custody or restore good time. I understand I should file a petition for a writ of habeas corpus if I desire this type of relief. _____ *MG* _____ (please initial)

The plaintiff wants the Court to: (check those remedies you seek)

___✓___ Award money damages in the amount of $ *5,000 dollars Compensatory from each ..* (Cont)

___✓___ Grant injunctive relief by *Ordering the Parole Board to follow 53.1-165.1 ...* Cont.
    *SEE Attaches )*

___✓___ Other *$10,000 dollars punitive damages from each for being Arbitray and Capricious ... Cont.*
    *SEE Attached*

## VI.    PLACES OF INCARCERATION

Please list the institutions at which you were incarcerated during the last six months. If you were transferred during this period, list the date(s) of transfer. Provide an address for each institution.

*Greensville*

## VII.    CONSENT

CONSENT TO TRIAL BY A MAGISTRATE JUDGE: The parties are advised of their right, pursuant to 28 U.S.C. § 636(c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit.

**Do you consent to proceed before a U.S. Magistrate Judge:** Yes [ ✓ ]  No [    ].  You may consent at any time; however, an early consent is encouraged.

## VIII.    SIGNATURE

If there is more than one plaintiff, each plaintiff must sign for himself or herself.

Signed this _____ *15* _____ day of _ *October* _____ , 20 *24* _____ .

Plaintiff _____    *1041258*

CHRISTINA HENDERSON
NOTARY PUBLIC
Commonwealth of Virginia
Registration #8048106
My Commission Expires 1|31|27

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

MARCUS GANZIE, pro'se

      Plaintiff,

Vs.

Case No. 2:24-cv-00460

GLENN YOUNGKIN, Governor
CHADWICK DOTSON, Director of Prisons
PATRICIA WEST, Chairman
LOYD BANKS, Vice. Chairman,
TOBY VICK,
MICHELLE DERMYER,
SAMUEL BOONE,
      ,VIRGINIA PAROLE BOARD
     Defendants.

## <u>AMENDED COMPLAINT</u>

COMES NOW, Pro'se plaintiff Marcus Ganzie request this court to allow plaintiff to **AMEND** his complaint pursuant to local, rule 15 (a), (1),(A) of the Federal Rules of Civil Procedures. On      the defendants were served with the original complaint. Therefore, making this request in accordance with the 21 day rule.

## INTRODUCTION

The plaintiff Marcus Ganzie submits the instant civil rights complaint against defendants

Governor Glenn Youngkin, at Patrick Henry bldg..., 1111E. Broad St., 3rd Fl., Richmond, V.A.

23219-1934, Chadwick Dotson (Director of Prisons), Patricia West (Chairman), Lloyd Banks

(Vice. Chairman), Michelle Dermyer, Toby Vick and Samuel Boone of the Virginia Parole Board

at 6900 Atmore Dr., Richmond, V.A. 23225.

The Plaintiff contends that the defendants violated his 14th amend Substantive Due Process

rights, Liberty Interest, 8th Amend. in addition, have been Deliberately Indifferent in the

application of parole policies, procedures, customs etc. towards him.

The Plaintiff submits that the facts alleged herein will establish a claim for which relief can be

granted and that the issue is ripe for adjudication through trial by jury.

The Plaintiff seeks declaratory and injunctive relief to order the Defendants to cease their

unconstitutional conduct outlined below, and to comply with Codes §53.1-165.1 and 53.1 -136

(2). Plaintiff seeks $5,000 dollars in compensatory damages from each
defendant for loss suffered. And $10,000 dollars in punitive
damages from each defendant for being arbitrary and capricious.

The plaintiff contends that the literal text of Code §53.1-165.1 and 53.1 -136 (2) when

contextually construed using neutral principles of statutory and substantive interpretation,

demonstrates that juvenile parole decisions **must** be "decided" based on demons-
trated maturity and growth.

The Defendants have subjected the plaintiff to unusual parole hearings (in 2022) that consisted

of the commonwealth attorney being one of the parole board members. Additionally, he was

not recused or replaced in violation of the 8th Amend. Depriving the plaintiff of Fundamental

Fairness and Substantive Due Process, guaranteed in Juvenile parole proceedings, procedures,

customs, policies etc.

The Defendants have subjected plaintiff to parole hearings where (2022, and 2023) plaintiff had

to get 100% "grant" votes unfairly. The parole procedures only required 80% "grant" votes.

2

Which prejudiced plaintiff's parole hearings and violated his Substantive Due Process rights embodied in the 14th Amend.

The Defendants have created the practice of conducting the plaintiff's (2022 and 2023) parole hearings and basing their decisions in accordance with §53.1-155 breaching the plaintiff's reliance on the statutory mandate of the Juvenile Decision Structure, which violates the plaintiffs 14th Amend. Liberty Interest invested in the "parole proceedings, procedures, customs, policies etc."

The parole board has arbitrarily and capriciously violated the plaintiffs reliance in 53.1-165, and 53.1-136(2)
By not abiding by the obligatory mandate of "deciding" whether" juveniles demonstrate "growth and maturity".
Plaintiff also, seeks to sue each defendant in their individual and official capacity.

## JURISDICTION & VENUE

The court has subject matter jurisdiction over the case pursuant to 28 USC §1331, 42 USC §1983, and 28 USC §§2201 and 2202 this being a suit for damages and declaratory judgement. The Court has territorial jurisdiction over the case pursuant to 28 USC §1343 since the claim arose in Greensville County, Virginia. Venue properly lies with this court pursuant to 28 USC §§127 and 1391, and E.D. Va. Loc. R. Practice 3 since it is in the district wherein the claim arose.

## PARTIES

### a. Plaintiff

1. Marcus Ganzie (plaintiff) has been going up for parole since 2013. The past two years (specifically) parole hearings has caused plaintiff to suffer the injuries giving rise to this complaint. Plaintiff has been incarcerated at Greensville Correctional Center, 901 Corrections Way, Jarratt Virginia 23870.

### b. Defendants

2. Governor Glenn Youngkin is charged with the sole power to hire and fire the parole board. His responsibilities in regards to the parole hearings are to ensure the process maintains an orderly and fair operation. In this case ensuring that the board is fully staffed with five members. Mr. Youngkin directly and indirectly created a parole process where plaintiff had to get 100% "grant" votes. He also, subjected plaintiff to a parole process where plaintiff's prosecuting attorney was a board member. Mr. Youngkin's normal place of business is the Governor's Office at Patrick Henry bldg..., 1111E. Broad St., 3rd Fl., Richmond, V.A. 23219-1934 and he is being sued in both his individual and official capacities.

3. Chadwick Dotson was the Parole board Chairman in 2022 and 2023 and denied plaintiffs parole hearing and appeals NOT based on the Juvenile Statutory Mandate. He also, never recused Toby Vick (Plaintiff's prosecuting attorney) from the parole board. Mr. Dotson's normal place of business is at 6900 Atmore Dr., Richmond, V.A. 23225. He is being sued in both his individual and official capacities.

4. Toby Vick was on the parole board from 2022 until March 2023 and never recused himself. I 'am not aware of his place of business. He is being sued in both his individual and official capacities.

5. Patricia West is the current Parole Board chairwoman. She denied plaintiffs 2023 appeal, on March 19, 2024 NOT based on the Juvenile Statutory Mandate. She will be conducting plaintiff's parole hearing this year. Ms. West's normal place of business is at 6900 Atmore Dr., Richmond, V.A. 23225.She is being sued in both his individual and official capacities.

4

6.  Lloyd Banks is the vice chairman of the parole board. He denied plaintiff parole in 2023 NOT based on the Juvenile Statutory Mandate. Mr. Banks normal place of business is at 6900 Atmore Dr., Richmond, V.A. 23225. He is being sued in both his individual and official capacities.

7.  Samuel Boone was the vice chairman of the Parole Board in 2022 and part of 2023. He denied plaintiff parole in 2022, and 2023 NOT based on the Juvenile Statutory Mandate. Mr. Boone normal place of business is at 6900 Atmore Dr., Richmond, V.A. 23225. He is being sued in both his individual and official capacities.

8.  Michelle Dermyer has been on the parole board since 2022 and 2023. She denied plaintiff parole in 2023 NOT based on the Juvenile Statutory Mandate. Ms. Dermyer's normal place of business is at 6900 Atmore Dr., Richmond, V.A. 23225. She is being sued in both her individual and official capacities.

## FACTS

9.  On September 1, 1994 plaintiff Marcus Ganzie was arrested as a juvenile (17yrs.old) and charged with two counts of capital murder, robbery, and several firearms charges. Due to evidence, those charges were reduced to 1st Degree Murder Pursuant to VA. Code.[1] §18.2-18.

10.  On May 25, 1995 plaintiff was sentenced to life and 73 yrs. With the possibility of parole in Henrico County Circuit Court by, Judge Tidey.

11.  Commonwealth Attorney Toby Vick and Wade Kizer prosecuted this case.

12.  On January 15, 2022, Governor Glenn Youngkin terminated the Parole Board and appointed Chadwick Dotson, Chairman, Tracy Banks, Cheryl Nici-O'Connell, Hank Partin, and Carmen Williams. (See Exhibit E.)

13.  On March 10, 2022, only Chairman Dotson was confirmed by the General Assembly.

14.  On April 6, 2022, Governor Youngkin appointed Samuel Boone, Vice Chairman, Steven Buck, Michelle Dermeyer, and Toby Vick to the Parole Board.

15.  On October 11, 2022, plaintiff's parole certified denial date was issued. In which plaintiff received three consecutive denial votes from a fully staffed (five maned) "parole board. Toby Vick (the prosecuting attorney that prosecuted plaintiff for the current crimes he is seeking parole for) **was one of the five members** (based on recusal practices... Peculiarly, there is not any record to determine whether Toby Vick recused himself.).

16.  Subjecting plaintiff to a process where he had to get 100% "grant" votes. Causing plaintiff to suffer atypical hardship. (See Exhibit B. and C)

---

[1] Code §18.2-18. How principals in the second degree and accessories before the fact punished.

17. The appointees denial on October 11, 2022 failed to adhere to the required "statutory mandate" juvenile policies and procedures outlined in§ 53.1-165.1 (E), and§ 53.1-136(2)[2]. And "decide" whether plaintiff "demonstrated maturity and growth"

18. Plaintiff was treated differently from other juveniles who the codes were used on intentionally. (See Exhibit D. anonymous juveniles parole denial from 2023.[3])

19. On November 28, 2022, an appeal was mailed to the Virginia Parole Board.

20. Within the appeal, plaintiff informed Chair Dotson that the board ,"erred in its application of policies and procedures" in regards to not using the juvenile statutory mandate to "decide" plaintiffs parole decision,

21. Having Toby Vick on the board and not recusing himself, or being recused and

22. Being denied fundamental fairness.

23. On March 21, 2023, the appeal was denied by Chairman Dotson for the following reasons, "there is no significant new information provided", "does not affect the reason(s) you were not granted parole", "does not show significant error in information or application of policies or procedures". See (Attached Exhibit C.)

24. Chair Dotsons' denial was intentional, purposeful and discriminatory. When he was actively using the juvenile statutory mandate on other juveniles. And just used it in January 2023 on David S. Butchee. (See Exhibit D.) arbitrarily and capriciously.

25. Chair Dotson disregarded Toby Vick being plaintiffs convicting C.A. blatantly.

26. In March of 2023, Steven Buck failed to be confirmed by the General Assembly, and Toby Vick resigned.

27. From January 2023 until September 2023 there were only 3 parole board members.

28. On June 14, 2023 plaintiff filed a Writ of Mandamus with the Supreme Court of Virginia against Governor Glenn Youngkin. Requesting him to do his ministerial duty and appoint two parole board members. In order for plaintiff to receive a fair parole hearing (See Attached Exhibit G.).

29. On July 21, 2023 plaintiff filed a Motion for Injunction to have the Mandamus heard before the Aug parole hearing. In order to not be judged dissimilarly from others seeking parole (See Exhibit H.).

30. In August, Chairman Dotson was removed from the parole board and appointed Director of Virginia prisons.

31. In September of 2023, Governor Glenn Youngkin appointed Patricia West and Lloyd Banks to the Parole Board.

32. On October 4[1] 2023, the Supreme Court issued an order denying the Writ of Mandamus and Motion for Injunction. (See Attached Exhibit I.)

---

[2] § 53.1-136(2), the board may only consider "demonstrated maturity and rehabilitation and the lesser culpability of juvenile offenders."

[3] David S. Butchee is the anonymous, had to get permission to use his name.

33. On December 28, 2023, plaintiff's parole certified denial date was issued. In which plaintiff received three consecutive denial votes from a partially staffed (four maned) parole board. That did not consist of Toby Vick. Again, subjecting plaintiff to a process where he had to get 100% "grant" votes .

34. The parole board also, again, denied plaintiffs parole on December 28, 2023 without "deciding" whether plaintiff demonstrated "maturity and growth". Outlined obligatorily in 53.1-165.1 and 136(2).

35. Plaintiffs appeal informed Chair West that the board, "erred in its application of policies and procedures" in regards to not using the juvenile statutory mandate to "decide" plaintiffs parole decision.

36. On March 19, 2024, Chairwoman Patricia West denied the appeal based on, "does not affect the reason(s) you were not granted parole". (See Attached Exhibit F.)

37. Chair West denial was intentional, purposeful and discriminatory. When the board did not "decide" plaintiffs parole hearing based on the juvenile statutory mandate.

38. And was actively using the juvenile statutory mandate on other juveniles for years. (See Exhibit D.) Arbitrarily and capriciously.

39. Due to Governor Glenn Youngkins inaction and supplant of 1.206 illegally. It subjected plaintiff and the class/group of prisoners with life sentences. To have to get 100% (All 4 votes) grant votes unfairly. Arbitrarily and capriciously.

40. The other group/class of prisoners without life do not have to get 100% grant votes.

41. The Legislature never intended on any groups/class of prisoners needing 100% grant votes.

42. Delegate Irene Shin was "frustrated" with the governor's tacit inaction and created H.B. 913 because from January – October 2023 the board only had 3 members and "lifers" (those that need 4 votes) were "unable to be granted parole or conditional release".

43. H.B. 913 was introduced in the 2024 General Assembly session. (See Exhibit M.)

44. H.B. 913 aim was to "ensure that the parole board, a government body is able to fulfill its mission in a timely manner."

45. 913 made a unanimous decision of 3 members (when there are only 3) able to now grant parole for lifers.

46. The governor (Youngkin) signed the Bill, which went into effect on July 1, 2024.

47. The Bill still subjects' plaintiff to having to get 100% grant votes if there is only a quorum of 3 board members.

48. In Virginia, life sentences need four consecutive grant votes[4].

49. Grant decisions in Virginia normally require three votes[5].

50. Plaintiff has no adequate remedy at law to resolve this matter.

---

[4] 1.206 Decision Process for inmates serving life sentences for 1ˢᵗ Degree Murder. Virginia Parole Board Policy and Procedures Manual.

[5] Virginia Parole Board Policy and Procedures Manual G. The Parole Decision, 1. "Board Decisions to grant or not grant parole shall require the concurrence of no less than three members of the board."

**Article V., Section 7. Executive and administrative powers.**

51. "The Governor shall have power to fill vacancies in all offices of the Commonwealth for the filling of which the Constitution and laws make no other provision. If such office be one filled by the election of the people, the appointee shall hold office until the next general election, and thereafter until his successor qualifies, according to law. The General assembly shall, if it is in session, fill vacancies in all offices, which are filled by election by that body.

52. Gubernatorial appointments to fill vacancies in offices which are filled by election by the General Assembly or by appointment by the Governor which is subject to confirmation by the Senate or the General Assembly, made during the recess of the General Assembly, shall expire at the end of thirty days after the commencement of the next session of the General Assembly."
AND,

**Code of Virginia, § 53.1-134** invest the Governor with the power to "appoint" Parole Board members.  ONLY the General Assembly can "confirm" said appointees.

53. The Governor has abused his authority against plaintiff in that. He has a constructive knowledge of his duty to maintain the orderly operation of the parole process. Moreover, he knows his appointment of members to the board is an integral and necessary component to maintaining that orderly operation of the parole process.

54. The governor before assuming his position made changes to the parole board part of his platform, and made terminating the board one of his first acts. His first appointments consisted of **five members (not 4)** in order to maintain the orderly operation of the parole board. (Chadwick Dotson, Chairman, Tracy Banks, Cheryl Nici-O'Connell, Hank Partin, and Carmen Williams.) (See. Exhibit E.)

55. After they were all denied confirmation on March 10, 2022, **except for Chairman Dotson**.

56. The Governor soon after appointed **four more (making it five again)** members to maintain the orderly operation of the parole board. (Samuel Boone, Vice Chairman, Steven Buck, Michelle Dermyer, and Toby Vick.) On April 6, 2022.

57. Steven Buck was denied, confirmation in March 2023 and Toby Vick resigned.

58. In late August 2023, the Governor moved Chairman Dotson to the Director of prisons and appointed Patricia West as the new Chairman. In early September, Lloyd Banks was appointed as Vice Chairman demoting Samuel Boone to a member. Leaving the parole board with two "confirmed" members, and two "appointees". **Unusually leaving the board with only four members.**  Arbitrarily and capriciously.

**Virginia Codes§ 53.1-165.1, § 53.1-154, and §53.1-136 govern plaintiffs case.**

**Section 53.1-136. Powers and duties of Board reads:**

In addition to the other powers and duties imposed upon the Board by this article, the Board shall:

1. Adopt, subject to approval by the Governor, general rules governing the granting of parole;

**Virginia Codes§ 53.1-165.1, Limitation on the application of parole statues reads:**

> **E.** Notwithstanding the provisions of subsection A or any other provision of this article to the contrary, any person sentenced to a term of life imprisonment for a single felony or multiple felonies committed while the person was a juvenile and who has served at least 20 years of such sentence shall be eligible for parole and any person who has active sentences that total more than 20 years for a single felony or multiple felonies committed while the person was a juvenile and who has served at least 20 years of such sentences shall be eligible for parole. The Board shall review and decide the case of each prisoner who is eligible for parole in accordance with § 53.1-154 and rules adopted pursuant to subdivision **2 of § 53.1-136**

59. On October 11, 2022, plaintiffs certified denial date was issued. In which plaintiff received three consecutive denial votes from a fully staffed (five maned) ""parole board.
60. Toby Vick (the prosecuting attorney that prosecuted plaintiff for the current crimes he is seeking parole for) **was one of the five appointees**. (Based on recusal practices... Peculiarly, there is not any record to determine whether Toby Vick recused himself.). Subjecting plaintiff to an unusual process where he had to get 100% "yes" votes.
61. On March 1, 2023, there were only three confirmed parole board members (Chadwick Dotson, Michelle Dermeyer, and Vice Chairman Samuel Boone).
62. Governor Glenn Youngkin has the **sole power** and duty to appoint parole board members, and to fill vacancies. See, §53.1-134, "There shall be a parole board which shall consist of up to 5 members appointed by the governor".
63. The governors 'unusual inaction subjected plaintiff to an unfair process that circumvented plaintiffs vested liberty interest in the policy to being **"reviewed by a fully staffed parole board, (5 members)"**. In order To ONLY, need 80% (4 grant votes).
64. The Virginia Parole Board's Policy and Procedures Manual dictates, "A decision to grant will require 4 consecutive votes." (1.206 Decision Process for inmates serving Life sentences for 1st Degree Murder). With the parole board having **"absolute discretion"** a three maned board rendered plaintiffs' statutory rights feckless.

65. Plaintiff (a juvenile) has already suffered irreparable harm from not receiving fundamentally fair parole hearings in 2022 and 2023.

66. Since 2022 and 2023 plaintiffs, statutory juvenile rights have been undermined by forcing plaintiff to get 100% "grant" votes.

67. First, in 2022 `pursuant to 1.215(VPBPPM) plaintiffs parole team requested a meeting.Toby Vick was appointed.(Exhibit L.)`

68. Second, unusually there is no recusal on record for Toby Vick, which prejudiced plaintiff's 2022-parole hearing. (See Attached Exhibit B. and C.) , the parole board meets ALL together and discusses cases on the docket EVERY week, and seeks the commonwealth attorneys input).          (See Exhibit J.)

69. Third, in 2023 the parole board was only staffed with 4 board members, (Samuel Boone, Michelle Dermeyer, Lloyd Banks, and Patricia West) forcing plaintiff to get 100% votes dissimilarly from others going up for parole.

70. Fourthly, plaintiffs' case unusually has never been decided based on the statutory Juvenile Decision Structure. (See Exhibit D.)

71. This court is called upon for," **the interpretation"** of Juvenile statutory Code§ 53.1-165.1, 1.206 Decision Process for inmates serving life sentences for 1st Degree Murder, (Virginia Parole Board Policy and Procedures Manual.) and the guarantee of fundamental fairness in the application of said "rules, customs and statutory procedures".

72. Plaintiff has also been subjected to an unfair appeal process by raising claims against the individuals who actually rendered the decisions to be challenged. Therefore, circumventing plaintiffs' right to an impartial tribunal.

73. On 11/28/22, my appeal raised the claim that Toby Vick was the prosecuting attorney that convicted the plaintiff for the crimes he is seeking parole for. Yet, the appeal was denied by Mr. Dotson unusually and left the plaintiff feeling hopeless in relying on fairness in parole hearing policy and procedures (See Exhibit C.)

74. In **2022, Chairman Dotson** denied plaintiffs appeal AND was one of the parole board members to render a "not grant" vote:

75. •Boone "not grant" 9/27          •Buck "not grant" 10/7          •Dotson "not grant" 10/11.

76. In **2023**, Chairwoman Patricia West unusually denied plaintiffs appeal and was made aware that it was not in accordance with the Juvenile statutory mandate:

77. •Dermyer "not grant" 12/18          •Boone "not grant" 12/27          •Banks "not grant" 12/28

# CAUSE OF ACTION

## FIRST CAUSE OF ACTION
## (THE PAROLE BOARDS DENIAL OF VESTED LIBERTY INTEREST 14th Amend.
## IN A FUNDAMENATLLY FAIR PROCESSS, 8th Amend. And, Deliberate Indifference)

78. The plaintiff realleges and incorporates by reference paragraphs 9-77 herein.

79. In 2022 and 2023 plaintiff was subjected to parole hearings by the parole board that plaintiff relied on being in accordance with the Juvenile Statutory Mandate.

80. Defendant Dotson deliberately and unusually disregarded the fact that Toby Vick was the prosecuting attorney that prosecuted plaintiff for the charges he is seeking parole, and that there is not a recusal on record and , or that plaintiff has to get 100% "grant votes" if there is.

81. In addition, plaintiff also stated that the denial was not in accordance with the Juvenile Statutory mandate (Exhibit C.).

82. Defendant Dotson objectively and unreasonably still denied the appeal knowing of the violations.

83. Due to the breach of the parole board. Plaintiff suffered the irreparable harm of not having the parole hearing adjudicated based on, "Demonstrated growth and maturity" standards for juveniles. (See Exhibit A. and B plaintiff's denials. (See Exhibit D. a Juvenile offender denial based on Juvenile Statutory Mandate).

84. Plaintiff has lost trust in relying on parole proceedings, customs, policies and procedures being fair. The parole board has been arbitrary and capricious to plaintiff.

## SECOND CAUSE OF ACTION
## (Deliberate Indifference, 8th Amend. Ex post facto Clause violation)
## EQUAL PROTECTION VIOLATION

85. The plaintiff realleges and incorporates by reference paragraphs 12- 77 herein.

86. The Governor has abused his authority against plaintiff in that. He has constructive knowledge of his duty to maintain the orderly operation of the parole process. Moreover, his appointment of members to the board is an integral and necessary component to maintaining that orderly operation of the parole process.(See Exhibit E.)

87. The Defendant's (The Governor) deliberate and unusual inaction has caused plaintiff to suffer the fate of consistently having to get 100% "grant" votes in a parole process that dictates ONLY 80% (life sentences have to get 4 of 5 votes) (Prisoners without life sentences need 3 out of 5). The governor has been arbitrary and capricious indirectly to the plaintiff.

11

88. The Defendant's deliberate indifference to appointing a fifth parole board member has made the process unfair to plaintiff and is objective and unreasonable. It has caused plaintiff to be subjected to a fundamentally flawed parole hearings.

89. The Governor has circumvented and usurped the parole board's policy creation powers in essence by inaction on parole board member appointments. This inaction has caused juveniles with life sentences like plaintiff. To sufficient risk of increasing, the threshold of "grant votes" required for parole unfairly and illegally.

90. Plaintiff relies on his Juvenile Substantive Due Process Rights remaining intact throughout the parole hearings. It has not.

91. Additionally, this indirect punishment of inaction applies ONLY to life sentences. Plaintiff has a "life sentence" and having to get 100% "grant votes" in a parole procedure that only requires 80% for offenders with Life sentences, is prejudicial.

92. Plaintiff continues to suffer the irreparable harm of a discernable bias towards "Life sentences". That is arbitrary and capricious.See Exhibits D,E,M, and I.

## THIRD CAUSE OF ACTION
### (Denial of Substantive Due process 14th Amend. For Juveniles 8th Amend, And Deliberate Indifference)

93. The plaintiff realleges and incorporates by reference paragraphs 9-7 Therein.

94. In 2022, plaintiff was subjected to an unusual parole hearing where the prosecuting attorney that convicted plaintiff (Toby Vick), (For the convictions he seeks parole for.) was a parole board member.

95. Toby Vick never recused himself even though he knows that he had a conflict of interest objectively and unreasonably.

96. There is not a recusal on record from his required participation in meetings required of the board, (See Exhibit J.) to discuss cases on the docket.

97. Plaintiff was prejudiced and suffered the irreparable harm of a Conflict of Interest in a grossly unfair parole hearing.  See Exhibit L.

98. The 11/28/22, appeal raised the claim that Toby Vick was the prosecuting attorney that convicted the plaintiff for the crimes he is seeking parole for. Yet, the appeal was denied by Mr. Dotson and left the plaintiff feeling hopeless in relying on fairness in parole hearing policy and procedures (See Exhibit C.). Plaintiff suffered the breach of fairness arbitrary and capriciously.

## FOURTH CAUSE OF ACTION

### (Denial Of Juvenile Substantive Due Process Rights 14th Amend., 8th Amend. And Deliberate Indifference)
### EQUAL PROTECTION

99. The plaintiff realleges and incorporates by reference paragraphs 12- 77 herein.

100.    The Governor (and 2024) has and will continue to objectively and unreasonably circumvent plaintiffs Juvenile Substantive Due Process to fair parole hearings as long as there is only 4 parole board members and plaintiff has to get 100% grant votes.

101.    On June 11, 2023 plaintiff filed a writ of Mandamus against the Governor for his unusual in action. See Exhibits G,H,I and M.

102.    In 2023, there were only four board members and plaintiff had to get 100% grant votes unfairly. Plaintiff was denied parole and left feeling betrayed by parole policy and procedures that he relied on to protect him from receiving prejudicial treatment. The governors gross inaction was arbitrary and capricious causing plaintiff to suffer a higher threshold illeagally.

## FIFTH CAUSE OF ACTION

### (Collective Denial of 8th Amend. Substantive Due Process 14th Amend Of Parole Hearing Procedures, and Deliberate Indifference.)

103. The plaintiff realleges and incorporates by reference paragraphs 9- 77 herein.

104. The parole board for the past 2yrs. (2022 and 2023) has subjected plaintiff to unusual parole hearings objectively and unreasonably that consist of:

105.  The commonwealth attorney as a parole board member. With no recusal, or appointment of a substitute on record. An unusual obstacle in place ONLY the plaintiff had to hurdle unfairly.

106. There have ONLY been four parole members for the past year and a half. Plaintiff had to get four "grant votes" (100%) another obstacle in place that offenders without life sentences do not have to hurdle.

107. Plaintiff's 2022 hearing and 2023 hearing was denied without complying with the Juvenile Statutory Mandate. Another obstacle ONLY the plaintiff must overcome.

108. Defendant West denied plaintiffs parole appeal deliberately after being made aware that plaintiff's parole was denied not in accordance with the Juvenile Statutory Mandate. (See Exhibit F.)

109. The plaintiff is being subjected to an unfair practice of parole hearings, procedures, customs, policies etc. on a yearly basis. Another obstacle ONLY the plaintiff has to face.

110. The parole procedures, customs, policies etc. applied to plaintiff, are not in compliance with §53.1-165, §53.1-136, the 14th Amend. , 14th Amend. (Liberty Interest invested in the procedures.) and the Juvenile Statutory Mandate consistently.

111. These collective violations have subverted and circumvented ALL plaintiff's Substantive Juvenile "Different level of culpability and punishment than adults" standards.

112. These standards are in place to guide the parole considerations plaintiffis relying on.

113. Plaintiff suffers and continues to suffer the lack of receiving Fair parole hearings under these circumstances.

114. Due to these inequities and prejudicial acts. The plaintiff has suffered a continued **bias and arbitrary and capricious process.**

115. As a direct and proximate result of the conduct of Defendants, as described above. **(See Exhibits)**


## SIXTH CAUSE OF ACTION

### (Ex Post Violation, ) (Equal Protection Vioalation)

116. The plaintiff realleges and incorporates by reference paragraphs 12- 77        herein.

117. In 2023 Plaintiff had to get 100% (All 4) "grant votes" under a statue only stipulating 80% (4 out of 5).

118. Due to Governor Glenn Youngkin's inaction in regards to appointing a 5th parole board member.

119. It subjected plaintiff and others with life sentences to a sufficient risk of injury. In which the parole statute (1.206) requirement of needing 80% "grant votes" for parole (4 out of 5), was supplanted into needing 100% "grant votes" (All 4) illegally.

120. In response to the illegal restructuring. The State Legislature created H.B. 913 during the 2024 General Assembly Session. **The governors actions were capricious**

121. **and arbitrary towards plaintiff.**

122. Governor Glenn Youngkin signed the Bill that takes effect July 1, 2024.

123. Plaintiff was denied his vested interest in a "vote" due to the governor's inaction. **(See Exhibits E and M).**

## SEVENTH CAUSE OF ACTION

### (Equal Protection Violation)

124. The plaintiff realleges and incorporates by reference paragraphs 9-77 herein.

125. Chairman Dotson, Samuel Boone and Steven Buck denied plaintiffs parole on October 11, 2022 and didn't "decide" it based on the juvenile statutory mandate. As prescribed in Code of Virginia 53.1-165.1 E and 53.1-136(2).

126. Plaintiff was treated differently from other juveniles who had their parole decisions "decided" in accordance with the Code.

127. Plaintiff informed Chair Dotson that the board,"erred in its application of policies and procedures" in regards to not using the juvenile statutory mandate to "decide" plaintiffs parole decision.

128. On March 21, 2023, the appeal was denied by Chairman Dotson for the following reasons, "there is no significant new information provided", "does not affect the reason(s) you were not granted parole", "does not show significant error in information or application of policies or procedures". See Exhibit C,D).

129. Chair Dotson's denial was intentional, purposeful and discriminatory. When he was actively using the juvenile statutory mandate on other juveniles.

130. The unequal treatment placed an atypical, and prejudicial hardship on plaintiff only specific to him, unfairly.

Chairman Dotson,Boone and Buck were arbitrary and capricious when they treated plaintiff differently during his 2022 parole hearing.

16

## EIGHTH   CAUSE OF ACTION

### (Equal Protection Violation)

131. The plaintiff realleges and incorporates by reference paragraphs 9-77 herein.

132. Dermyer , Boone , and Banks denied plaintiffs parole on December 28, 2023. The board again, "decided" plaintiffs parole decision, not in accordance with the juvenile statutory mandate outlined in §53.1-165.1 (E) and 136(2). Treating plaintiff differently than other juveniles going up for parole.

133. Plaintiffs appeal informed Chair West that the board,"erred in its application of policies and procedures" in regards to not using the juvenile statutory mandate to "decide" plaintiffs parole decision. **See Exhibit D, and F.**

134. On March 19, 2024, Chairwoman Patricia West denied the appeal based on, "does not affect the reason(s) you were not granted parole".

135. The board did not "decide" plaintiffs parole hearing based on "demonstrated growth and maturity". Which 53.1-165.1 and 53.1-136 (2) states is the only reason to "effect" decisions for juveniles.

136. Chair West denial was intentional, purposeful and discriminatory. Due to the fact that the board was actively using the mandate on other juveniles for years, and

137. The unequal treatment by Chair West placed an atypical, and prejudicial hardship on plaintiff only specific to him unfairly.

**Chairwoman West, Dermyer, Boone and Banks were arbitrary and capricious when they treated plaintiff differently during his 2023 parole hearing.**

## NINTH CAUSE OF ACTION

### (Equal Protection Violation)

138. The plaintiff realleges and incorporates by reference paragraphs 12- 77 herein.

139. Due to Governor Glenn Youngkins inaction and supplant of 1.206 illegally. It subjected plaintiff and the class/group of prisoners with life sentences. To have to get 100% (All 4 votes) grant votes unfairly.

140. The other group/class of prisoners without life don't have to get 100% grant votes.

141. The Legislature never intended on any groups/class of prisoners needing 100% grant votes.

142. Plaintiff went up for parole in-between July – September 2023 when there were only 3 board members ,and was turned down in December 2023.

143. The governors (Youngkin) inaction is the casual and direct link to there only being 3 members reviewing plaintiffs parole hearing.

144. And , there only being four members on the parole board reviewing plaintiffs parole hearings now.

145. The governor's tacit inaction is the causing factor to plaintiff and the class/ group of prisoners with life that now have to get 100% grant votes.

146. While those without life don't have to get 100% grant votes.

147. Delegate Irene Shin was "frustrated" with the governor's tacit inaction and created H.B. 913 because from January – October 2023 the board only had 3 members and "lifers" (those that need 4 votes) were "unable to be granted parole or conditional release". And introduced H.B. 913 in the 2024 General Assembly session.

148. H.B. 913 aim was to "ensure that the parole board, a government body is able to fulfill its mission in a timely manner." See Exhibit E and M.

149. 913 made a unanimous decision of 3 members (when there are only 3) able to now grant parole for lifers.

150. The governor (Youngkin) signed the Bill, which went into effect on July 1, 2024.

151. The Bill still subjects' plaintiff to having to get 100% grant votes if there is only a quorum of 3 board members. The governors inaction has caused plaintiff to suffer unequal treatment by the parole board arbitrarily and capriciously.

## TENTH    CAUSE OF ACTION

### (Equal Protection Violation)

152. The plaintiff alleges and incorporates by reference paragraphs 9-77 herein.

153. In between July and September of 2022 plaintiff went up for parole.

154. Toby Vick (the commonwealth attorney that convicted plaintiff of the charges he seeks parole for.) was a parole board member.

155. Pursuant to 1.215 plaintiffs parole (parole board policy procedures manual) team requested a meeting with a board member. Toby Vick was appointed to be the member to review plaintiffs case.

156. Plaintiffs parole team immediately objected through the proper channels and somebody else was appointed. See Exhibit C,D and L.

157. Plaintiff was denied parole on October 11, 2022.

158. Toby Vick remained on the parole board and a substitute member was never appointed to participate in the weekly meeting to discuss parole decisions.

159. Plaintiff was prejudiced and subjected to an atypical hardship only placed upon the plaintiff by having his commonwealth attorney on the parole board.

160. Plaintiff was treated differently than everybody going up for parole.

161. Plaintiff appealed the denial on November 28, 2022 informing Chair Dotson of the conflict of interest of Toby Vick.

162. And Toby Vick not recusing himself or being recused being fundamentally unfair to plaintiff.

163. Chair Dotson denied plaintiffs appeal intentionally, purposefully and discriminatorily, which handicapped plaintiffs 2022 parole hearing.

164. Nobody else going up for parole had to face this obstacle.
Toby Vick and Chair Dotson were arbitrary and capricious towards plaintiff causing him to suffer the denial of being treated like everybody else fairly.

WHEREFORE, Plaintiff requests the following relief:

A. Assume Jurisdiction over this action;

B. Declaratory judgement that the parole policy, procedures etc. Have been unfair and unusual to plaintiff and violated the 8th Amend. and Juvenile Substantive Due Process Rights. In addition, that the parole policy, procedures etc. Violated his Liberty Interest invested in said parole policy, procedures etc. Also, pass judgement that the Governor has been Deliberately Indifferent to plaintiff.

C. Order the Governor to appoint a 5th Parole Board member.

D. Order the Parole Board to follow its policy and procedures when conducting plaintiff's parole hearings.

E. Award Plaintiff damages as follows:

   i. Compensatory damages $5,000 dollars each defendant,

   ii. Punitive damages $10,000 dollars each defendant for the arbitrary and capriciousness.

   iii.    Grant whatever else the court deems appropriate.

Respectfully Submitted,

Marcus Ganzie

KHAIL WILLIAMS
NOTARY PUBLIC
Commonwealth of Virginia
Registration #7909980
My Commission Expires 11 30 25

20

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of the aforementioned _Amended Complaint_ was mailed via U.S. Mail, first class, postage pre-paid, on this the _23_ day of _MAY_____, 20_25_ to:

_Clerk_
_United States District Court_
_600 Granby St._
_Norfolk, V.A. 23510_

## DECLARATION OF MARCUS GANZIE

I MARCUS GANZIE declare:

1) For the past 2yrs. i've been subjected to unfair Parole Hearings.

2) Defendants Dotson and West have been deliberately indifferent to the fact that my parole denials were not in accordance with with the Juvenile Statutory Mandate, (53.1-165 and 53.1-136).

3) Defendant Youngkins' indepth constructive knowledge of the inner workings of the Parole Board duties,and operation. Has made his inaction on the appointment of a fifth member an Ex.Post Facto violation that the General Assembly tried to rectify with HB 913.

4) Defendant Youngkin has also been deliberately indifferent to his duty to maintain the orderly operation of the parole process through appropriate membership numbers.(Being 5)

5)Defendant Vick (the commonwealth attorney that prosecuted plaintiff) was on the parole board in 2022. He was appointed to conduct my 2022 interview with my parole team/family until an objective was made by the "team" for a "conflict of interest.

6) He remained on the board during "reviews" of cases and actively represented a conflict of interest against plaintiff. He was never rescused and there was never an appointment of a substitute.

7) Defendants Banks, Dermyer and Boone have denied the plaintiff parole for the past 2yrs NOT based on the Juvenile Statutory Mandate.

8) I have been denied Substantive Due Process as a juvenile.

9) I have been denied Fairness guarantee'd by the process.

10) I suffered irreparable harm for 2yrs that cannot be quantified.

11) I ask the Court to order in my favor against the Defendants.

Marcus Ganzie

9/1/24





# COMMONWEALTH OF VIRGINIA

*Virginia Parole Board*
*6900 Atmore Drive*
*Richmond, Virginia 23225*
*V/TDD (804) 674-3081*
*FAX (804) 674-3284*

**Certified On :** December 28, 2023

Ganzie, Marcus, DOC# 1041258

Greensville Correctional Center
901 Corrections Way
Jarratt, Virginia 23870-9998

Dear Marcus Ganzie:

The Virginia Parole Board recently reviewed your case for potential release on discretionary parole. As you know, the goal of the Parole Board is to release on parole those eligible offenders deemed suitable for release and whose release will be compatible with the welfare of society and the offender.

The Board, in determining whether you should be released on parole, considered a number of factors, including, but not limited to, whether your release would be compatible with public safety and the mutual interests of society and you; whether your character, conduct, vocational training and other developmental activities during incarceration reflect the probability that you will lead a law-abiding life in the community and live up to all conditions of parole, if released; sentencing information; facts and circumstances of the offense(s) including mitigating and aggravating factors; prior criminal history and information regarding adjustment to previous probation or parole, if any; personal history; institutional adjustment such as your response to available programs; changes in attitude toward self and others; release plans; evaluations; impressions gained when interviewed by the parole examiner; and any other information provided by your attorney, family, victims or other persons.

In accordance with Code Section 53.1-155 and in consideration of the factors listed above and the information available to us, the Virginia Parole Board's decision to **not grant** parole on December 28, 2023 is based primarily on the following reasons:

- Release at this time would diminish seriousness of crime

- You need further participation in institutional work and/or educational programs to indicate your positive progression towards re-entry into society.

- The Board concludes that you should serve more of your sentence prior to release on parole.

- Serious nature and circumstances of your offense(s).

While this may not be the answer you hoped for, please continue your hard work. The Parole Board made every effort to balance your rehabilitation needs with the public safety considerations on behalf of the citizens of Virginia.

If you believe that the Board made errors or that there is new or different information not available to the Board when the case was decided, you may request reconsideration of the decision. Requests for reconsideration must be received by the Board within sixty (60) days of the decision date on forms furnished by the Board to the institution; however, please be advised that the Board will reconsider cases only for specific errors or significant new or different information that was <u>unavailable</u> to the Board when the case was decided.

Sincerely,

By direction of the Virginia Parole Board:

Patricia West
Chair





# *COMMONWEALTH OF VIRGINIA*

*Virginia Parole Board*
*6900 Atmore Drive*
*Richmond, Virginia 23225*
*V/TDD (804) 674-3081*
*FAX (804) 674-3. ?4*

Cer    On : October 1  2022

Ganzie, Marcus, DOC# 1041258

Greensville Correctional Center
901 Corrections Way
Jarratt, Virginia 23870-9998

Dear Marcus Ganzie:

The Virginia Parole Board recently reviewed your case for potential release on discretionary parole. As you know, the goal of the Parole Board is to release on parole those eligible offenders deemed suitable for release and whose release will be compatible with the welfare of society and the offender.

The Board, in determining whether you should be released on parole, considered a number of factors, including, but not limited to, whether your release would be compatible with public safety and the mutual interests of society and you; whether your character, conduct, vocational training and other developmental activities during incarceration reflect the probability that you will lead a law-abiding life in the community and live up to all conditions of parole, if released; sentencing information; facts and circumstances of the offense(s) including mitigating and aggravating factors; prior criminal history and information regarding adjustment to previous probation or parole, if any; personal history; institutional adjustment such as your response to available programs; changes in attitude toward self and others; release plans; evaluations; impressions gained when interviewed by the parole examiner; and any other information provided by your attorney, family, victims or other persons.

In accordance with Code Section 53.1-155 and in consideration of the factors listed above and the information available to us, the Virginia Parole Board's decision to **not grant** parole on October 11, 2022 is based primarily on the following reasons:

- Release at this time would diminish seriousness of crime

- Serious nature and circumstances of your offense(s).

- The Board concludes that you should serve more of your sentence prior to release on parole.

- Conviction of a new crime while incarcerated

- You need further participation in institutional work and/or educational programs to indicate your positive progression towards re-entry into society.


While this may not be the answer you hoped for, please continue your hard work. The Parole Board made every effort to balance your rehabilitation needs with the public safety considerations on behalf of the citizens of Virginia.

If you believe that the Board made errors or that there is new or different information not available to the Board when the case was decided, you may request reconsideration of the decision. Requests for reconsideration must be received by the Board within sixty (60) days of the decision date on forms furnished by the Board to the institution; however, please be advised that the Board will reconsider cases only for specific errors or significant new or different information that was unavailable to the Board when the case was decided.


Sincerely,

By direction of the Virginia Parole Board:

Chadwick Dotson
Chair

*Exhibit C*



VIRGINIA PAROLE BOARD

BY:_____

**PB28**
(CCOP/PBPM)

## APPEAL/RECONSIDERATION OF NOT GRANT DECISION

*If you do not agree with the Virginia Parole Board's denial of your recent request for parole, you may appeal or request reconsideration. A family member or loved one may not petition on your behalf. You may only submit one appeal or request for reconsideration per denial. Documentation previously reviewed or that is available in an inmate's electronic file is not considered new information and will not be reviewed/considered.*

Ganzie, Marcus | **Greensville** | 1041258

INMATE NAME *(Last Name, First Name MI.)* | INSTITUTION *(Prison Name)* | VADOC INMATE ID NUMBER *(7 digits)*

*I request an appeal or reconsideration Virginia Parole Board's decision to deny me parole based on the following reason:*

○ *Significant new information not previously reviewed by the Board*

● *Significant error in information or application of policies or procedures*

1) The board erred in its application of policies, or procedures by making its decision in accordance with Code section 53.1- 155. This is in direct violation of 1.205 Assessment and Parole Consideration of Youthful Offenders policy (Virginia Parole Board Administrative Procedures Manual) and the authority codes, 53.1-136, 53.1-165.1 E. and 53.1-154.

2) The board erred by not abiding by 1.206 Decision Process For Inmates Serving Life Sentences for First Degree Murder. (Virginia Parole Board Administrative Procedures Manual) and its authority policies/codes , Chapter IV , Article 3, Sections 53.1- 151, 53.1- 154 and sections I, II , and III of the V.P.B.P.M.

3) The Board erred in its application of Code 53.1- 134, and 1.206 (V.P.B.P.M) if it allowed Howard Vick (the Commonwealth's Attorney who prosecuted and convicted Marcus Ganzie for the crimes for which he asks to be paroled) to make one of the possible concurring 4 votes; rendering the parole procedures fundamentally unfair.

4) Assuming Howard Vick recused himself (for conflict of interest) that would mean that there were only 4 board members (Mr. Buck, Mr. Boone, Ms. Dermyer, and Mr. Dobson.) and there would have to be a 100% concurring yes vote to gain parole. This restructuring of policy and procedures of 1.206 (V.P.B.P.M.) is fundamentally undair. It has subjected Marcus to an arbitrary, and unconstitutional hearing with a capricious nature unfairly.

See attached memorandum in support.

11/28/2022 | X | *Julie C. McConnell*

DATE (MM/DD/YYYY) | | SIGNATURE

P428

------------------------------- DO NOT WRITE BELOW THIS LINE -------------------------------

The Virginia Parole Board has carefully reviewed the stated basis of the request for an appeal or reconsideration and concludes:

○ There appears to be adequate basis for appeal or reconsideration and your case is being reviewed by the Board. You will be contacted when the investigation is complete.

○ Other:

⊗ *Your request for an appeal or reconsideration is not granted because there is not adequate basis for reconsideration based on the following determinations:*

✗ there is no significant new information provided

the information was considered by the Board at the time of decision-making

✗ does not affect the reason(s) you were not granted parole

✗ does not show significant error in information or application of policies or procedures

Other:

| | | |
|---|---|---|
| 3-21-23 | Chair | [signature] |
| DATE | TITLE | SIGNATURE |

## APPEAL OR RECONSIDERATION FORM SUBMISSION INSTRUCTIONS

I.   If you do not agree with the Virginia Parole Board's denial of your recent request for parole, you may appeal or request reconsideration. A family member or loved one may not petition on your behalf. An appeal or request for reconsideration will only be considered if you can show that the decision by the Board was in error based on one of the following reasons:

   • An error in the information or application of Board policies or procedures; or
   • You have significant new information that was not considered by the Board at the time of decision-making.

II.  To appeal or request reconsideration your submission must include all relevant information you wish to have considered. All requests must be submitted to the Board within 60 days of the date of the Board's Not Grant Letter. Decisions are made pursuant to the laws governing the Parole Board.

III. You may only submit one appeal or request for reconsideration per denial. Duplicate submissions will not be considered.

IV.  Documentation previously reviewed or that is available in an inmate's electronic file is not considered new information and will not be reviewed/considered.

V.   Send your request for reconsideration to:

   Virginia Parole Board
   6900 Atmore Drive
   Richmond, Virginia 23225

VI.  Please Note: The Board's decision is final.

  

*Exhibit D*

# COMMONWEALTH OF VIRGINIA

*Virginia Parole Board*
*6900 Atmore Drive*
*Richmond, Virginia 23225*
*V/TDD (804) 674-3081*
*FAX (804) 674-3284*

Certified On :  January 4, 2023



Greensville Correctional Center
901 Corrections Way
Jarratt, Virginia 23870-9998



The Virginia Parole Board recently reviewed your case for potential release on discretionary parole. As you know, the goal of the Parole Board is to release on parole those eligible offenders deemed suitable for release and whose release will be compatible with the welfare of society and the offender.

The Board, in determining whether you should be released on parole, considered a number of factors, including, but not limited to, whether your release would be compatible with public safety and the mutual interests of society and you; whether your character, conduct, vocational training and other developmental activities during incarceration reflect the probability that you will lead a law-abiding life in the community and live up to all conditions of parole, if released; sentencing information; facts and circumstances of the offense(s) including mitigating and aggravating factors; prior criminal history and information regarding adjustment to previous probation or parole, if any; personal history; institutional adjustment such as your response to available programs, changes in attitude toward self and others; release plans; evaluations; impressions gained when interviewed by the parole examiner; and any other information provided by your attorney, family, victims or other persons.

In accordance with Code Section 53.1-155 and in consideration of the factors listed above and the information available to us, the Virginia Parole Board's decision to not grant parole on January 4, 2023 is based primarily on the following reasons:

- [illegible] · [illegible]
- Crimes committed
- Poor record of institutional [illegible] that [illegible] [illegible]
- Serious nature and circumstances of your offense(s)
- Yet need to show a longer period of stable adjustment
- Poor institutional adjustment (for example, motivation attitude, unfavorable reports, lack of program involvement, [illegible])
- Other:
  Reviewed pursuant to statutory mandate on the basis of demonstrated maturity and rehabilitation and the lesser culpability of juvenile offenders. Given lengthy infraction history, needs a longer period of stable adjustment to show he has matured.
- Considering your offense and your institutional records, the Board concludes that you should serve more of your sentence before being paroled.


   While this may not be the answer you hoped for, please continue your hard work. The Parole Board made every effort to balance your rehabilitation needs with the public safety considerations on behalf of the citizens of Virginia.

   If you believe that the Board made errors or that there is new or different information not available to the Board when the case was decided, you may request reconsideration of the decision. Requests for reconsideration must be received by the Board within sixty (60) days of the decision date on forms furnished by the Board to the institution. However, please be advised that the Board will reconsider cases only for specific errors or significant new or different information that was <u>unavailable</u> to the Board when the case was decided.


                    Sincerely,

                    By direction of the Virginia Parole Board


                    Chadwick Dotson
                    Chair



*Commonwealth of Virginia*
*Office of the Governor*

# Executive Order

### NUMBER THREE (2022)

## RESTORING INTEGRITY AND CONFIDENCE IN THE VIRGINIA PAROLE BOARD AND THE COMMONWEALTH'S SYSTEM OF CRIMINAL JUSTICE

By virtue of the authority vested in me as Governor, I hereby issue this Executive Order to restore integrity and confidence in the Commonwealth's System of Criminal Justice by terminating the current Virginia Parole Board, naming five highly qualified individuals to the Parole Board, directing the Secretary of Public Safety to perform a programmatic review of the Parole Board's procedures, and requesting the Attorney General conduct a full investigation.

### Importance of the Initiative

Article I, Section 8-A of the Constitution of Virginia affords certain rights to victims of crime in the Commonwealth, including the right to reasonable and appropriate notice, information, and protection. Virginia law further requires the Virginia Parole Board provide notice of its decision to grant discretionary parole or the conditional release of an inmate. Virginia law and internal policy and procedure manuals govern the Virginia Parole Board's decisions.

The Virginia Office of the State Inspector General ("OSIG") recently conducted an independent investigation into allegations involving the Virginia Parole Board. These allegations were brought forward by citizens, crime victims and their relatives, and elected Commonwealth's Attorneys. The OSIG investigation revealed some of the inmates released by the Virginia Parole Board had been recently denied parole or otherwise deemed ineligible for parole, raising questions about the lawfulness of the abrupt reversals of these decisions. The Virginia Parole Board also violated victims' rights and broke Virginia law by releasing multiple violent offenders without complying with the legally required notification to the victim or the prosecutor.

To this day, the family members and victims have no answers as to how or why the Virginia Parole Board failed to abide by the laws governing its operations, and no one has held accountable.

We therefore must ensure confidence and integrity in our criminal justice system. T often, victims of violent crime are ignored, silenced, and overlooked. Victims deserve to kt their voices matter. In order to ensure that these mistakes never happen again, we must full understand the decisions that led to them.

The Parole Board's failure to uphold the laws enacted by the General Assembly ha: damaged the integrity of the Commonwealth's System of Criminal Justice and undermined confidence of our citizens. We therefore must reform the Virginia Parole Board and replac current members with qualified and committed public safety experts who will uphold the l properly apply the policies of the Board, and restore confidence and integrity in our system criminal justice.

## Directive

Accordingly, pursuant to the authority vested in me as Chief Executive of the Commonwealth and pursuant to § 53.1-134 of the *Code of Virginia*, I hereby terminate the current parole board, and hereby appoint:

- The Honorable Chadwick Dotson of Wise County, Chairman
- Tracy Banks of the City of Charlottesville
- Cheryl Nici-O'Connell of Chesterfield County
- The Honorable Hank Partin, Sheriff, of Montgomery County
- Carmen Williams of Chesterfield County

Further, the Secretary of Public Safety and Homeland Security is directed to perfor programmatic review of the Parole Board's duties, procedures, and administration. The re shall include, but not be limited to, increasing the transparency of Parole Board votes, recc reasons for granting parole, and reviewing the management, personnel, and operations of t Parole Board.

This review shall provide recommendations for legislative, administrative, and pol changes that will improve the administration of the agency in fulfilling its solemn public s mission.

This review shall be submitted to me no later than September 1, 2022.

## Attorney General Authorization

By virtue of the authority vested in me by § 2.2-511 of the *Code of Virginia*, I here request the Attorney General to coordinate the prosecutorial and investigative efforts and bring such cases as he may deem appropriate in order to protect the citizens of the Commonwealth and hold accountable any individuals who have violated existing law or v the rights of victims of crime.

## Effective Date

### Virginia Parole Board Recommendation Scale for Parole Examiners

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|

      Not Recommended                Maybe           Recommende

Legend

1        Definitely Not Recommend. Considerations:  Poor institutional Adjustment in th 24 months. Poor attitude during interview. Strong Victim Opposition. Inmate si PB-16 indicating that he / she is not interested in parole consideration. Not enou served. Horrendous Crime. Multiple Victims. Lengthy Criminal History.

2        Not Recommend. Considerations:  Same as #1 – just a matter of degree.

3        Leaning towards a Not Recommend. Considerations: Subject is moving in the rig direction for a parole recommendation but issues persist (i.e. victim opposition / horrible crime / home plan not great / amount of time served)

4        Maybe. Unsure. Equal Number of Positives and Negatives. Considerations: Sub presents well but there are noticeable concerns such as consistent victim opposi poor release plan / Major Mental Health Issues.

5        Leaning towards a Recommend. Considerations: Everything looks good but perl one or two areas of concern (i.e. victim opposition / amount of time served).

6        Recommend. Considerations: Similar to #7 – just a matter of degree. Candidly, where most recommendations for parole fall under – it is doubtful if any of us w select a rating of '7'.

7        Definitely Recommend. Considerations: No Victim Opposition. Subject has serv lengthy amount of time. Excellent support system and parole plan. Recommenc from Counselor. No institutional infractions within the past 24 months.  Manda Good Time Release Date within 2 years. Remorseful. Excellent presentation dur interview.

Factors to Keep in Mind when making a recommendation regarding parole:

1. Severity of Crime
2. Adult Criminal Record / Juvenile Criminal Record
3  Length of Sentence Ordered / Length of Sentence Served
4. Age at time of Offense / Current Age
5. Institutional Behavior
6. Emotional Quotient (Psycho-Social History / Mental Health / Level of Remorse / Motivat Crime at offense date vs Present Understanding) vs. Intelligent Quotient.
7. Interview Presentation
8. Support System
9. Plan for Release (Is the release plan realistic?)
10  Victim / Victim Family Input / Opposition from other parties (CA / Law Enforcement)

This Executive Directive shall be effective upon its signing and shall remain in force and effect unless amended or rescinded by future executive order or directive.

Given under my hand and under the Seal of the Commonwealth of Virginia, this 15th day of January, 2022.



Glenn Youngkin, Governor

Attest:

Kelly Thomasson, Secretary of the Commonwealth

3

Exhibit F,





RECEIVED
FEB ... 2...
BY:_____

VIRGINIA PAROLE BOARD

**PB28**
(CCOP/PBPM)

## APPEAL/RECONSIDERATION OF NOT GRANT DECISION

*If you do not agree with the Virginia Parole Board's denial of your recent request for parole, you may appeal or request reconsideration. A family member or loved one may not petition on your behalf. You may only submit one appeal or request for reconsideration per denial. Documentation previously reviewed or that is available in an inmate's electronic file is not considered new information and will not be reviewed/considered.*

Ganzie, Marcus                    **Greensville**                    1041258

INMATE NAME *(Last Name, First Name MI.)*    INSTITUTION *(Prison Name)*    VADOC INMATE ID NUMBER *(7 digits)*

*I request an appeal or reconsideration Virginia Parole Board's decision to deny me parole based on the following reason:*

○ *Significant new information not previously reviewed by the Board*

● *Significant error in information or application of policies or procedures*

Mr. Ganzie respectfully asks the Board to reconsider its recent denial of his release on parole. At the time of Mr. Ganzie's parole decision, the board erred in its application of policies, or procedures under Virginia Code §§ 53.1-136(2) and 53.1-155. According to Virginia Code § 53.1-136(2), the board shall adopt rules for granting parole for those eligible under § 53.1-165.1 on the basis of demonstrated maturity and rehabilitation and lesser culpability of juvenile offenders. Mr. Ganzie was only 17 when he committed this crime in 1994 and he had no prior record. During the actual crime, only Mr. Ganzie's co-defendant carried a weapon, and Mr. Ganzie did not actually shoot the two victims. Since the crime and his subsequent incarceration, Mr. Ganzie has demonstrated both great remorse for his role in the crime and extensive efforts into his rehabilitation. For example, Mr. Ganzie has participated in as many programming opportunities as possible. including; substance abuse and anger management, art therapy, problem solving skills. adult education levels II and III, custodial maintenance training, data entry, computer literacy training, and more. Mr. Ganzie has even conducted a Juneteenth panel discussion at Greensville that he organized with speakers in the community. He has also served in several job positions, most recently in the law library conducting legal research. Among the statutory factors to be considered under Virginia Code § 53.1-155. the board shall investigate the prisoner's history, physical and mental condition and character and his conduct. employment and attitude while in prison determine that his release on parole will not be incompatible with the interests of society or of the prisoner. Mr. Ganzie has now been infraction free for over 5 years and the majority of infractions took place in the first 15 years of his incarceration. Additionally, he has had 61 drug screens since he became incarcerated and has never had a positive result. He also has no gang involvement throughout his incarceration and there is nothing gang-related in his file. Mr. Ganzie has also formulated an in-depth reentry plan with Vanessa Price, M.A., a university level criminology professor who has extensive experience in the areas of offender reentry and prevention of recidivism. He also has a place to live with his mother who is very supportive of him and who is committed to helping him succeed upon his reentry. His brother, sister, and extended family are also very involved in his success, and his brother plans to make monthly trips from Florida to visit and mentor Mr. Ganzie. who has agreed to be mentored. Lastly, Mr. Ganzie has secured an offer of employment upon his release to work for SDB Trucking as a dispatcher where he will monitor, update, and record calls. These circumstances enable Mr. Ganzie to become a productive member of his community who has matured and

2/28/24                    X    *Julie C. McConnell*

DATE (MM/DD/YYYY)              SIGNATURE

NOTE: Return two copies of this form to the Virginia Parole Board            1 of 1            Rev. 5/1/2021  Effective 10/01/2021

P329

———————————————— DO NOT WRITE BELOW THIS LINE ————————————————

**The Virginia Parole Board has carefully reviewed the stated basis of the request for an appeal or reconsideration and concludes:**

○    There appears to be adequate basis for appeal or reconsideration and your case is being reviewed by the Board. You will be contacted when the investigation is complete.

○    Other:

◯̸    *Your request for an appeal or reconsideration is not granted because there is not adequate basis for reconsideration based on the following determinations:*

| there is no significant new information provided | the information was considered by the Board at the time of decision-making | ✗ does not affect the reason(s) you were not granted parole | does not show significant error in information or application of policies or procedures |

Other:

3-19-2024          *Chair.*          *Patricia L. West*
DATE                    TITLE                         SIGNATURE

## APPEAL OR RECONSIDERATION FORM SUBMISSION INSTRUCTIONS

I.   If you do not agree with the Virginia Parole Board's denial of your recent request for parole, you may appeal or request reconsideration. A family member or loved one may not petition on your behalf. An appeal or request for reconsideration will only be considered if you can show that the decision by the Board was in error based on one of the following reasons:

   •   An error in the information or application of Board policies or procedures, or
   •   You have significant new information that was not considered by the Board at the time of decision-making.

II.  To appeal or request reconsideration your submission must include all relevant information you wish to have considered. All requests must be submitted to the Board within 60 days of the date of the Board's Not Grant Letter. Decisions are made pursuant to the laws governing the Parole Board.

III. You may only submit one appeal or request for reconsideration per denial. Duplicate submissions will not be considered.

IV.  Documentation previously reviewed or that is available in an inmate's electronic file is not considered new information and will not be reviewed/considered.

V.   Send your request for reconsideration to:

   **Virginia Parole Board**
   **6900 Atmore Drive**
   **Richmond, Virginia 23225**

VI.  Please Note: The Board's decision is final.

NOTE: Return two copies of this form to the Virginia Parole Board          2 of 2          Rev. 11/2020 Effective 01/01/1995

*Exhibit G.*

VIRGINIA:

## IN THE VIRGINIA SUPREME COURT

_Marcus Crozie Bivens_

Petitioner.

v.

_Clean Virginia Governor_ )

Respondent.

Case No _____

## PETETION FOR WRIT OF MANDAMUS

Comes now, the Petitioner, _Marcus Crozie_ , pro'se, pursuant to section 8.01-644 et seq. of the Code of Virginia, 1950, amended, and moves this Honorable Court to grant the petition for a Writ of Mandamus directed to the named Respondent to perform the _ministerial_ acts set forth herein. Your Petitioner respectfully represents as follows:

## JURISDICTION

This Court has jurisdiction over the subject matter herein pursuant section 17.1-309 of the code of virginia, 1950, as amended, and Article VI, 1 of the Virginia Constitution. Petitioner seeks to invoke the original jurisdiction of this court pursuant to the proceeding provisions.

## STATEMENT OF FACTS

1. On May 25, 1115 petitioner was sentenced to life and 73 ys with the possibility of parole in Henrico County by Judge Tidey. Prosecuted by commonwealth attorney Tony Pub. Freeman (and Waschizer)

Committed as a juvenile. Governed by Cases 53.1-165.1E, 53.1-154 and 53.1-136.

   As of March 2023 there are only 3 parole board members due to
2. a board members resignation (Toby Vick) and anothers failure to be confirmed by both houses (Steve Buck)

   Pursuant to the Virginia Parole Boards Policy and Procedures Manual 1.206 Decision Process for inmates serving Life Sentences for 1st Degree Murder. "A decision to grant will require 4 consecutive votes."

3. (Authority, Chapter IV, Article 3, sections 53.1-151, 53.1-154) Governor Glenn Youngkin has the sole power to appoint parole board members, and to fill vacancies (Prescribed by 53.1-134)

   Petitioner is scheduled for parole review on or around August. On August 17, 2023 at 3:00pm. Petitioner's family is scheduled
4. to meet with a parole board member.

   Petitioner has a vested liberty interest in being reviewed by a fully staffed parole board (5 members).

   Governor Glenn Youngkins inaction of not hiring 2 more parole board members has circumvented petitioners right. And also,

5. his inaction has caused petitioner to be subjected to a fundamentally unfair process.

   Last year petitioner was subjected to a parole hearing that consisted of the commonwealth attorney (Toby Vick) that convicted petitioner for the current crimes. Being one of the parole board members. **Forced** petitioner to have to get 100% yes votes in order to make parole. (4 members.)

(See Attached,
Memorandum In Support

WHEREFORE, the Petitioner prays that the Court award him a Writ of Mandamus

directed to the Respondent compelling him to:

Appoint, 2 more parole board members that are not directly or indirectly related to the case that the petitioner wishes to be sentence for.

Petitioner also request to present oral arguments before this Honorable Court in regards to this matter.

And's last but not least, due to petitioner not being licensed, please construe lightly.

I, _____ , State I.D.# _____ ,

being duly sworn, say that I have read the fore going and know the contents

therefore and that the same is true to the best of my knowledge, information and

belief.

Respectfully Submitted,

# CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of the aforementioned_____ _____ was mailed via U.S. Mail, first class, postage pre-paid, on this the 11th day of June_____ , 20 23  to:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Prusuant to Virginia Rules  of the Supreme Court 5:7 (b),(ii), (3):
" A petition for writ of mandamus filed by or on behalf of a person confined in a state correctional facility must be brought within one year after the cause of action accrues.

<u>MEMORANDUM OF LAW IN SUPPORT</u>    *Exhibit G.*

On September 1st 1994 petitioner, Marcus Ganzie was arrested as a juvenile (17 yrs.old) and charged with two counts of capital murder, robbery and several firearms charges.

(Due to evidence, those charges were reduced to 1st Degree Murder because petitioner was determined to be an accessory and not the triggerman.) See,

Virginia Codes 53.1-165.1, 53.1-154, and 53.1-136 govern. See also <u>Brown v. Dep't of Cors,</u> 886 f.Supp. 531, 1995 U.S. Dist. Lexis 7201 (E.D.1995).

" The parole eligibility statue in effect on the date of the offenses for which the felon is convicted is the statue that controls the convicts eligiblity for parole."

As of March 1st,2023 there are only 3 parole board members. Governor Glenn Youngkin has the sole power and duty to appoint parole board members, and to fill vacancies. See, 53.1-134

" There shall be a parole board which shall consist of up to 5 members appointed by the governor."

The  governors inaction has subjected petitioner to an unfair process that circumvents his vested liberty interest in being reviewed by a fully staffed parole board, (5 members).

    " B. Entitlement to Parole

[4] A state has no duty to establish a parole system, and a prisoner has no constitutional right to release before the expiration of his sentence, <u>Greenholtz v. Inmates of Nebrtaska Penaland Correctional Complex</u> 442 U.S. 1, 7, 99 S.Ct. 2100,2103, 60 L.Ed.2d 668 (1979).

but when a state chooses to establish a system of parole the procedures which are adopted must be fundamentally fair, <u>Jackson v. Shields,</u> 438 Supp. 183, 184 (W.D. Va. 1977)". Reading from, <u>Fleming v. Murray,</u> 838f.Supp.734

(E.D. Va. 1994).

The Virginia Parole Board's Policy and procedures Manual dictates, " A decision to grant will require 4 consecutive votes." (1.206 Decision Process for inmates serving Life sentences for 1st Degree Murder)

With the parole board having "Absolute discreation" a 3 man'd board renders petitioner's statutory rights feckless.

(James v. Robinson, 863 f.3d Supp. 275 (E.D. Va. 1994) aff'd, 45 f.3d 426 (4th Cir. 1994).

In terms of Governor Glenn Youngkins ministerial duty to appoint Parole Board members. His inaction has made the parole hearing fundamentally unfair to petitioner.

His inaction has also peculiarly violated the expectation of liberty in the form of the process. That the parole board extends (1.206) to its prisoners with life for 1st Degree Murder.


WHEREFORE, Petitioner PRAYS for this court to GRANT his Writ of Mandamus.

IN THE VIRGINIA SUPREME COURT                    *Exhibit H.*

Marcus Ganzie,

      Petitioner.

V.

Governor Glenn Youngkin,

      Respondent.

## MOTION FOR INJUNCTION

COMES NOW, pro'se petitioner, Marcus Ganzie moves this honorable court to grant this Injunction directed to the name respondent to perform his ministerial duties outlined in the pending Writ Of Mandamus and this Motion. Before he loses the substantive value of his rights and suffer irreparable harm of a partial parole hearing . He relies on a fully staffed board.

### JURISDICTION

The United States Supreme Court has provided a four-part test in determining whether temporary injunction is appropriate. "(1) Is the movant likely to prevail on the merits of the case? (2) Will the movant suffer irreparable harm if not granted the preliminary injunction? (3) Does the balance of the equities favor the movant?, and(4) Is granting the injunction in the public interest? Winter v. NRDC Inc., 555U.S. 7, 20, 129 S. Ct. 365, 172 L.Ed. 2d 249 (2008).

Michies Jurisprudence 6. Irreparable Injury states: (in part)

      " "irreparable injury", it is not meant that there

          must be no physical possibility of repairing the

          injury, all that is meant is that the injury be a

          grievous one, or at least a material one, and not

adequately reparable in damages---" ( Emphasis added)

See Also----" Whenever the substantive value of the right in the character in which it is enjoyed is imperiled, that is suff- icient to invoke a courts jurisidiction to grant injunctive reli- ef".

## STATEMENT

On June 11,2022 plaintiff filed a Writ of Mandamus against Governor Glenn Youngkin. Requesting this honorable court to order the respondent to perform his ministerial duty and app- oint 2 more parole board members that don't directly, or in- directly effect plaintiff's case.

Plaintiff needs 4 "yes" votes in order to be granted parole due
        to having a life sentence per policy.

There are currently only 3 parole board members.

On August 23, 2023 plaintiff is scheduled for parole review and relies on a fully staffed board to review his case together. If this case is heard as scheduled by the current 3 person board without the other 2 members. Plaintiff will suffer irreparable harm , and denial of fundamental fairness. (See Attached Mem- orandum of Law in Support.)

WHEREFORE, the petitioner PRAYS that this court GRANT his Motion For Injunction and Award his Writ Of Mandamus directed to the Respondent.

## CERTIFICATE OF SERVICE BY MAIL

I hereby certify that on this _19th_ day of ___July___ , 20 _23_ , a true and

correct copy of the foregoing   Motion For Injunction        was served on the named

respondent(s), by way U.S. postal Service.

Governor Glenn Youngkin
Patrick Henry BLDG
1111 E. Broad St
3rd Floor
Richmond, V.A. 23219

_____

Pro se Petitioner

Exhibit I

## VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Wednesday the 4th day of October, 2023.*

Marcus Ganzie, No. 1041258,                                                        Petitioner,

against          Record No. 230435

Glen Youngkin, Governor,                                                        Respondent.

Upon a Petition for a Writ of Mandamus

Upon consideration of the petition for a writ of mandamus filed June 14, 2023, the Court

is of the opinion that the writ of mandamus should not issue as mandamus does not lie in this

case as petitioner does not seek to compel a public official to perform a purely ministerial duty.

It is therefore ordered that the petition be dismissed.

Upon consideration whereof, petitioner's July 21, 2023, motion for injunction is denied.

A Copy,

Teste:

Muriel-Theresa Pitney, Clerk

By:          JSrҀ

Deputy Clerk

Exhibit J.

(SIU). VPB's team of part-time investigators comprised of all retired law enforcement officers – can seek that input while conducting the investigation before making a recommendation to the Governor. By statute, SIU only conducts investigations on pardon petitions at the Governor's request, however Governors are not required to request an investigation in order to grant a pardon.

**Legislation requiring the Parole Board seek input from Commonwealth's Attorneys.** The current Board seeks input from CAs prior to making a decision to grant parole. This practice is incorporated into new policies and procedures, but the Chair recommends codification in order for the policy to be binding on future Boards.

**Increase transparency through website upgrades.** The website is the public face of the agency. It is imperative that it is a helpful resource for the public.

**Pardon recommendations.** On February 25, 2022, the Chairman and Secretary of the Commonwealth Kay Coles James jointly submitted recommendations for the granting of pardons, and forwarded those recommendations to the Governor's office. These recommendations are focused on demonstrating the Governor's belief in granting second chances when earned, and streamlining the process for granting pardons. See **Enclosure C**.

**Establish a classified executive-level position serving under the Parole Board Chairman.** A classified, executive-level position will permit some internal administrative functions to be realigned, freeing up limited time to focus on matters that only the agency head can act upon. While noting that VPB is small relative to other agencies, most other agencies have a chief deputy. Whether the position is called a chief operations officer, chief of staff, or administrative director, the duties would primarily entail the management of certain personnel and assignments of work. This executive-level position is envisioned to help provide a more seamless transition across administrations and facilitate efficiencies in operations.

## IX.    CONCLUSION

*Exhibit 5*

NOTE. Currently, VPB is operating with just two full-time and one part-time employee in our Victim Input Unit, led capably by Ms. Jamillah Harris.


A. Changes already implemented by the Youngkin administration

The Youngkin Parole Board has already implemented the following changes in procedure that are designed to improve operations in our Victim Input unit:


Prioritizing victim input. OSIG recommended that VPB develop policies and procedures for proactively contacting victims of crimes that occurred prior to the implementation of the NAAVI system (including accessing law enforcement databases and social media, contacting the appropriate Commonwealth's Attorney's office, etc.), particularly if the victims are not registered. The current Board agrees strongly with this recommendation. The opportunity to submit victim input should be developed for consideration *before* the offender's parole review in order to reduce issues relating to impartiality, fairness, and injustice.

Board members will no longer vote to grant parole before an attempt is made to seek input from victim(s). The Chairman has implemented a system for discussion of cases that ensures victims will be heard.

As noted above, the Board now discusses every case in which a parole examiner makes a "Grant" recommendation, as well as cases which are recommended "Not Grant" but which a Board member thinks merits a discussion. The VPB Administrator, Ms. Tracy Schlagel,[23] maintains a spreadsheet of every case to be discussed at upcoming meetings. As soon as a case is added to the list, our Victim Input Unit immediately begins reaching out to victims if they haven't already been in contact with the Board.[24] This is also the moment when we reach out to Commonwealth's Attorneys, seeking their input.

If the victim is registered in NAAVI, that process can be relatively easy. In most cases, however, it requires research to locate the victim and notify them. VPB works with local Victim-

---

[23] Ms. Schlagel has been employed at VPB since 1994.
[24] The Board does not proactively reach out to victims in cases that we are not discussing (though we do accept and consider any input received in these cases if and when victims reach out to us). As noted above, with three part-time Board members and more than 800 cases to discuss every quarter, we simply cannot discuss every single case on our docket. Thus, we prioritize cases in which there is a reasonable chance that the Board will grant parole. For cases in which there is little likelihood of a "Grant" decision, we see no reason to reach out to victims and re-traumatize them.

11

Whereas officers display victim information. We also have an investigator that uses various sources to try to identify victims (often using law enforcement databases, police records, and court documents) and their contact information.

That process often takes some time to complete, and occasionally it delays the Board's decision on a case. It needs to be a priority, so in the updated policies/procedures manual, this is now VPB will operate in the future.

**Sexually Violent Predator assessments.** In the past, when the Board voted to grant parole to a person who had been convicted of a sexual offense, the inmate was referred to DOC's Sex Offender Screening and Assessment Unit to determine if the offender qualified as a "Sexually Violent Predator." This is an instance where the Board was voting without having all the information at their disposal.[25]

Soon after appointment in mid-January, the Chairman was advised of four inmates who had been screened and determined to be Sexually Violent Predators, but had been granted parole by the prior Board. (They all were awaiting certification.)[26] The Chair immediately returned these cases to the Board for a new vote, and all four were subsequently denied parole as not being compatible with public safety.

Under our new procedures, when an offender who has been convicted of a sexual offense comes before the Board for discussion, an SVP screening is requested before the Board begins voting.

**Website overhaul.** The current VPB website is insufficient.[27] The current Chairman initiated the process of completely overhauling the site, which is packed with dense language and a confusing layout that makes it difficult for the public to navigate. Important information related to the manner in which the public can provide input to VPB was difficult to find. Given our new focus on transparency, this is simply unacceptable.

---

[25] To be fair, prior Board members occasionally changed their votes from "Grant" to "Not Grant" after receiving victim input, or after receiving the SVP screening. But as a matter of public policy, it seems unwise to vote to release someone before having all the information before you.

[26] When a case is certified by the Parole Board Administrator, the inmate and DOC are advised immediately of the Board's decision.

[27] One example: the link that referred victims to sign up for NAAVi was broken, and no one had noticed! We fixed that immediately.

DECISION STRUCTURE FOR JUVENILE PAROLE RECOMMENDATIONS

*Form Version: 1.01*

*Exhibit K.*

Offender Name: Click or tap here to enter text.    DOC #Click or tap here to enter text.
Examiner: Click or tap here to enter text.    Date of InterviewClick or tap here to enter text.

This decision structure is designed to provide the Parole Board with a context to assist and support Parole decisions for juvenile offenders eligible for Parole under Virginia Code § 53.1-165.1.

Board Members and Examiners are expected to utilize this as a guide for juvenile parole considerations, in support of the Commonwealth of Virginia's statutes, Board policies and procedures. This decision structure is not designed to generate a score; the factors shall provide a process and structure to help the Board members and Examiners make more consistent, transparent, and efficient parole decisions. The Board will continue to preserve its full discretion when determining a juvenile offender's appropriateness for release.

Considerable weight should be given to the Supreme Court rulings in *Roper v. Simmons 543 U.S. 551 (2005)*, *Miller v. Alabama, 132 S. Ct. 2455 (2012)*, and *Montgomery v. Louisiana, 136 S. Ct. 718, 734 (2016)*. In these cases, the Court opined that children should be held accountable with a different level of culpability and punishment than adults, in accordance with the Eighth Amendment to the United States Constitution. Differences in maturity and accountability inform the protections of the Eighth Amendment, which restricts sentencing a child to die in prison or excessive sentencing.

DECISION STRUCTURE GRID

RISK FACTORS

Risk factors are "personal traits, environmental factors, experiences or individual traits that increase probability of a negative outcome.

RISK FACTORS HISTORY

The PSI and interviews are valuable tools that can provide insight into the juvenile offender criminal risk factors. These factors include a history of criminal involvement from an early age (12 or younger), a pattern of gradually increasing severity in previous criminal activities, and minor infractions that occurred a year or two before the current offense. Additionally, the presence of substance use disorder before or during the offense should be noted.

Environmental risk factors include a family history of violence and conflict, poor relationships with parents or guardians, a history of school suspensions, personal trauma such as emotional, physical, or sexual abuse, negative associations with peers or co-offenders, and a parent or guardian who has been previously incarcerated.

*Directions: Place X symbol mark next to the statement(s) that applies to the Juvenile Offender. Please note: if the information is not available, note a N/A in the appropriate box.*

| ☒ | INDIVIDUAL CRIMINAL RISK FACTORS (Can be located within PSI and through interviews) | N/A |
|---|---|---|
| ☐ | Early involvement in criminality (age 12 or younger). | ☐ |
| ☐ | Previous record of criminal activity involving several offenses and a clear indication of a gradual increase in the severity of the crimes committed. (Please review PSI info. if available.) | ☐ |
| ☐ | Offenses* that are considered minor and have occurred a significant amount of time, e.g., year or two before the current offense. | ☐ |
| ☐ | No previous criminal history before this offense. | ☐ |
| ☐ | History of a diagnosis of Substance Use** Disorder prior or during time of offense. (Should be noted in PSI.) | ☐ |

*Non-Violent offenses that are not a direct threat to or cause harm to a victim (i.e., homicide, robbery, sex offense with force, felonious assault, and Burglary with an attempt to rape/murder.

** **Substance-use disorders** are patterns of symptoms resulting from the use of a substance that you continue to take, despite experiencing problems as a result. Maybe identified as substance abuse from 1.1.94 – 5.18.13.

1

## DECISION STRUCTURE FOR JUVENILE PAROLE RECOMMENDATIONS

*Form Version: 1.01*

| ☒ | ENVIRONMENTAL RISK FACTORS | |
|---|---|---|
| ☐ | Family history of violence and conflict. | |
| ☐ | Poor parent/child relationships. | |
| ☐ | History of school suspensions | N/A |
| ☐ | History of personal trauma (emotional, physical, sexual abuse). | ☐ |
| ☐ | Negative peers (include any co-offenders). | ☐ |
| ☐ | Parent/Guardian formally incarcerated. | ☐ |
| | | ☐ |
| | | ☐ |

## INSTITUTIONAL ADJUSTMENT & PROGRAMMING

The Institutional Adjustment and Programming criteria consists of two sections. The first section is Institutional Adjustment, while the second section is Programming.

*Directions: Place X symbol mark next to the statement(s) that applies to the Juvenile Offender. Please note: if the information is not available, note a N/A in the appropriate box.*

| ☒ | (INSTITUTIONAL ADJUSTMENT LAST 24 MONTHS) | |
|---|---|---|
| ☐ | No infractions within the last 24 months. | |
| ☐ | Absence of infractions and demonstrates behaviors above and beyond rule compliance. | N/A |
| ☐ | Infractions within the last 24-month period. | ☐ |
| ☐ | Reasonable *** explanation for infraction(s) within the last 24 months. | ☐ |
| | ***Rational, realistic, practical (please note in report) | ☐ |

| ☒ | PROGRAMMING | |
|---|---|---|
| ☐ | Completed (REQUIRED) programs based on risk factors identified within the assessment and/or programming based upon commitment offense(s). | |
| ☐ | Offender not given the opportunity to complete required programming. (Program not available or offered to offender). | N/A |
| ☐ | Offender *actively sought further programming opportunities when not given the opportunity to complete required programming.* (Program not available/or offered to offender.) | ☐ |
| ☐ | Offender given opportunity to attend programs but opted not to participate or complete the programs. | ☐ |
| ☐ | Risk factors identified within the COMPAS Re-entry Assessment continue to be relevant BUT the offender has actively participated in required programs, completed assignments, *and actively seeks further programming opportunities* | ☐ |
| ☐ | Offender has completed some required programs, but one or more required programs (risk factors) need to be addressed. | ☐ |
| | | ☐ |

2

**DECISION STRUCTURE FOR JUVENILE PAROLE RECOMMENDATIONS**

*Form Version: 1.01*

## PROTECTIVE FACTORS

Protective factors are "those characteristics (personal traits, environmental factors such as family, peers, community), that balance and buffer risk factors, as well as reduce the offender's vulnerability to reoffend."

There are several Protective Factors that must be addressed. The offender should take ownership of the offense and demonstrate self-reflection and remorse. They must consistently demonstrate a clear change in behavior, regardless of program completion. It is important for the offender to have a supportive network of family and loved ones identified through visitation and phone calls. They should also have an employment plan in place and must identify a plan for positive community interaction, such as building friendships and a healthy social environment. They should have a housing plan that, if necessary, includes identifying reasons not to return to an abusive environment with an alternate plan. Additionally, the offender should consider having an education plan in place. If the offender occupies a position of trust within the institution, this should be taken into consideration. The offender must agree to complete the Re-entry Program, if available, and have a home release plan that outlines a plan of action to manage risk factors avoid high-risk social places and people. Evidence that any identified family conflicts or stresses have been resolved should be considered. Finally, suitable, and supportive housing must be available (e.g., housing that supports mental health challenges, or housing for convicted sex offenders not located near schools or playgrounds).

*Directions: Place X symbol mark next to the statement(s) that applies to the Juvenile Offender. Please note: if the information is not available, note a N/A in the appropriate box.*

| ☒ | Current Protective Factors | N/A |
|---|---|---|
| ☐ | Required programming complete. | ☐ |
| ☐ | Ownership of the offense/demonstrating remorse (self-reflective). | ☐ |
| ☐ | Clear consistent demonstration of change regardless of program completion. | ☐ |
| ☐ | Supportive family/loved ones (visitation, phone calls). | ☐ |
| ☐ | Employment Plan. | ☐ |
| ☐ | Offender has identified a plan for positive Community interaction, e.g., friendships, and social environment. | ☐ |
| ☐ | Housing Plan-Offender can identify reasons not to re-enter abusive environment and have alternate plan. | ☐ |
| ☐ | Identified Education Plan. | ☐ |
| ☐ | Offender occupies a position of trust***** within the institution. | ☐ |
| ☐ | Offender agrees to complete the Re-entry Program. | ☐ |

*****Offender is assigned work that requires trust and minimum supervision; Demonstrates leadership qualities through development of programs, mentoring, and negotiation techniques, when applicable.

| ☒ | Home Release Plan | N/A |
|---|---|---|
| ☐ | Offender has an identified plan of action to manage risk factors to avoid high risk social places and people, individual, family, and community, social). | ☐ |
| ☐ | There is evidence of a resolution(s) of identified family conflict or stresses that indicate growth. ***** | ☐ |
| ☐ | Suitable, supportive housing available (e.g., convicted sex offender is not near school, playgrounds or where children congregate, or offender with mental health challenges has a home plan within range of mental health supportive services, or offender has transportation available). | ☐ |
| ☐ | Home Release Plan not evident. | ☐ |

*****Note: In case there is any indication that conflicts, abuses or mistreatments have not been resolved, it is advisable that the offender explore other options for a place of residence. Examiners it is important for examiners to make a note in the recommendation notes.

## DECISION STRUCTURE FOR JUVENILE PAROLE RECOMMENDATIONS

*Form Version: 1.01*

### ADDITIONAL FACTORS TO NOTE

When making a recommendation, it is important to consider various factors, such as victim input, which can include opposition or support letters, as well as input from the Commonwealth Attorney, who may either oppose or support release. Additionally, sentencing factors should be considered, including whether the sentencing guidelines were followed and if the sentencing was proportional to the offense committed. Co-defendant information should also be considered, such as whether the sentencing guidelines were followed and if the sentencing was proportional to the offense charged. *Directions: Place X symbol mark next to the statement(s) that applies to the Juvenile Offender. Please note: if the information is not available, note a N/A in the appropriate box.*

| ⊠ | Victim Input | N/A |
|---|---|---|
| ☐ | Victim opposition letters. | |
| ☐ | Victim support letters. | ☐ |
| ☐ | Other opposition letters. | ☐ |
| ☐ | Victim Parole Board meeting. | ☐ |
| ☐ | No victim input. | ☐ |
| | | ☐ |

| ⊠ | Commonwealth Attorney Input | N/A |
|---|---|---|
| ☐ | Commonwealth Attorney opposes release. | |
| ☐ | Commonwealth Attorney supports release. | ☐ |
| | | ☐ |

| ⊠ | Sentencing Factors | N/A |
|---|---|---|
| ☐ | Sentence falls within Sentencing Guidelines recommended range. | |
| ☐ | Sentencing not in proportion to offense. | ☐ |
| | | ☐ |

| ⊠ | Co-Defendant Information | N/A |
|---|---|---|
| ☐ | Co-defendant sentence falls within sentencing guidelines range. | |
| ☐ | Co-defendant sentencing not in proportion to offense charged. | ☐ |
| | | ☐ |

4

## DECISION STRUCTURE FOR JUVENILE PAROLE RECOMMENDATIONS

*Form Version: 1.01*

#### Decision Recommendation:

Examiners, please note: This decision grid serves as a guide, and you have the discretion to refer an offender for Board consideration even if the guide outcomes do not indicate referral. The Board continues to preserve its full discretion when determining a juvenile offender's appropriateness for release.

Please continue to provide support for your recommendation for Board consideration. Place an X symbol next to your recommendation to grant, maybe grant, not grant.

Reminders: Supreme Court and statutory guidance regarding the diminished culpability of juveniles as compared to adults, characteristic features of youth, and whether there has been demonstrated growth and improved maturity while incarcerated.

☐ Grant: Juvenile offender suitable for parole, does not remain a reasonable risk to public safety. Forward to Board for further consideration and discussion.

☐ Grant/Not Grant Discussion. Juvenile offender possibly suitable for parole. Recommend forwarding to the Board for further consideration and discussion.

☐ Not Grant: Teen offender not suitable for parole because he/she remains a CURRENT reasonable risk to public safety.

**Comments/Rationale/Recommendations: Begin typing in the box below.**

[Type here]

5

*Exhibit L*

# DECLARATION OF VANESSA PRICE, M.A.

I, VANESSA PRICE, M.A., declare:

I am writing on behalf of the Plaintiff (Marcus Ganzie) in this case, and I have personal knowledge of the facts I state below. If I were to be called as a witness, I could competently testify regarding what I have written in this declaration.

1. I was a member of Mr. Ganzie's parole representation/advisory team for the year 2022.

2. Mr. Howard "Toby" Vick, the Commonwealth's Attorney who prosecuted Mr. Ganzie on the charges for which Mr. Ganzie is incarcerated, was a parole board member at the time of Mr. Ganzie's attempt at parole.

3. Pursuant to parole board policy and procedures, I, along with Mr. Ganzie's team, requested a meeting with a parole board member prior to Mr. Ganzie's 2022 hearing.

4. That meeting was approved, and an appointment was scheduled with Mr. Vick.

5. Mr. Ganzie's team then filed an objection to Mr. Vick's participation in Mr. Ganzie's parole application to inform the board of the conflict of interest based on Mr. Vick's role in Mr. Ganzie's conviction.

6. There is no record of Mr. Vick's recusal to participate in weekly parole board meetings to discuss different cases, including that of Mr. Ganzie.

7. There was not an appointment of an additional, substitute parole board member to ensure fairness of the parole process for Mr. Ganzie.

In lieu of these facts, I ask the Court to order in favor of Mr. Ganzie's petition and declare that Mr. Ganzie has been subjected to an unfair, biased, and discriminatory process in his rightful attempts at a fair parole hearing by the Commonwealth of Virginia.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia that the foregoing is true and correct.

DATED: 6|17|24

Vanessa Price, M.A.
Guest Lecturer, Criminal Justice, King University
Reentry Specialist, The Life Unit, Org.
(423) 571.6912

M Gmail

Exhibit M

Julia Ganzie <jlganzie816@gmail.com>

---

## (no subject)

**Julia Ganzie** <jlganzie816@gmail.com>
To: <delishin@house.virginia.gov>

Mon, Jul 1 at 12:06 PM

REF: HB 913

Dear Ms. Shin,

During the 2024 general assembly You sponsored HB 913 which was signed by the Governor and takes effect today July 1, 2024.

The Bill allows prisoners that need 4 votes to now be able to be granted parole if they get 3 out of 4 votes.

Last year, prisoners that needed 4 out of 5 votes HAD to get ALL 4...

As a concerned citizen trying to understand the process, can you explain your reasoning for this piece of Legislation you introduced?

With Respect,
Julia Ganzie

(1)

 Gmail

Julia Ganzie <jewelya68@gmail.com>

## Fwd:
1 message

**Julia Ganzie** <jlganzie816@gmail.com>
To: "Jewelya68@gmail.com" <Jewelya68@gmail.com>

Thu, Jul 4, 2024 at 2:32 PM

---------- Forwarded message ---------
From: **Irene Shin** <DellShin@house.virginia.gov>
Date: Mon, Jul 1, 2024 at 2:07 PM
Subject: HB 913

Thank you for reaching out. The intention behind HB 913 is to ensure that, in a situation where the Virginia Parole Board requires at least four members in order to issue a parole ruling, but there are not four confirmed members on the Board, a unanimous decision of the existing Board will satisfy the requirement (so long as there is at least a quorum of three members).

Before HB 913 went into law today, in order for an incarcerated individual to be released from certain sentences on parole here in Virginia, four or more members of the Virginia Parole Board needed to concur. However, from January to October 2023, the Board only had three members, which left incarcerated individuals with good records functionally unable to be granted parole or conditional release, such as geriatric release or terminal illness.

HB 913 aims to ensure that the Parole Board, a government body, is able to fulfill its mission in a timely manner. It is intended to only affect votes that occur when there are not five confirmed members of the Board.

As amended and ultimately passed, if there are five confirmed members, there is no change (four votes are required). If there are four confirmed members, there is no change (four votes are required). If there are only three confirmed members, as was the case from January to October 2023, then all three must unanimously agree. This is where the change would apply. If there are fewer than three members, then there is no quorum and so the change does not apply.

I hope this makes sense? Please do not hesitate to reach back out if you have any additional questions.

Warmly,

Kristina

**Kristina Hagen (she/her)**
*Chief of Staff*
Delegate Irene Shin – Member, 8th District
804-698-1008 – Capitol Office





*Exhibit M.*

Julia Ganzie <jlganzie816@gmail.com>

## HB 913 Questions

**Kristina Hagen** <kristina@delegateshin.com>
To: Julia Ganzie <jlganzie816@gmail.com>

Tue, Jul 9, 2024 at 9:51 AM

Hi Julia --

### Was HB 913 created due to the Governors inaction with appointing parole board members ?

Delegate Shin was frustrated and disappointed that, from January through October of 2023, the Board only had three individuals, which left incarcerated people with good records functionally unable to be granted parole or conditional release, such as geriatric release or terminal illness. This bill aims to ensure that the Parole Board, a government body, is able to fulfill its mission in a timely manner.

### How is the process fundamentally fair if a person needs 4 out of 5 votes and there are ONLY 4 members?

The bill language reads:

*Notwithstanding any other provision of law or regulation, if the Parole Board adopts a rule or regulation requiring the concurrence of four or more members of the Parole Board to grant discretionary parole or conditional release, in the event that there are less than four members but at least three members on the Parole Board, then such requirement shall be satisfied upon a unanimous vote of all members on the Parole Board.*

In the event that a Parole Board rule requires four votes (out of, in theory, five confirmed members), four votes are still achievable if there are four confirmed members. Four votes are not achievable if there are only three confirmed members. This is the situation we faced from January to October 2023.

### Would a person that needs 4 votes qualify if they got 3 yes votes to be granted parole?

If the specific Parole Board rule governing the specific instance dictates that four votes are needed but there are only three confirmed members on the Parole Board at the time of the vote, and all three voted to grant parole, then the answer is yes under this bill.

I hope this is helpful! Please let me know if you have any additional questions.

Warm regards,
Kristina
[Quoted text hidden]

--
**Kristina Hagen**
703-314-6405





## *COMMONWEALTH OF VIRGINIA*

*Virginia Parole Board*
*6900 Atmore Drive*
*Richmond, Virginia 23225*
*V/TDD (804) 674-3081*
*FAX (804) 674-3284*

**Certified On :** October 11, 2023

Faulk, Truvelle L, DOC# 1081934

Sussex I State Prison
24414 Musselwhite Drive
Waverly, Virginia 23891-1111

Dear Truvelle L. Faulk:

The Virginia Parole Board recently reviewed your case for potential release on discretionary parole. As you know, the goal of the Parole Board is to release on parole those eligible offenders deemed suitable for release and whose release will be compatible with the welfare of society and the offender.

The Board, in determining whether you should be released on parole, considered a number of factors, including, but not limited to, whether your release would be compatible with public safety and the mutual interests of society and you; whether your character, conduct, vocational training and other developmental activities during incarceration reflect the probability that you will lead a law-abiding life in the community and live up to all conditions of parole, if released; sentencing information; facts and circumstances of the offense(s) including mitigating and aggravating factors; prior criminal history and information regarding adjustment to previous probation or parole, if any; personal history; institutional adjustment such as your response to available programs; changes in attitude toward self and others; release plans; evaluations; impressions gained when interviewed by the parole examiner; and any other information provided by your attorney, family, victims or other persons.

In accordance with Code Section 53.1-155 and in consideration of the factors listed above and the information available to us, the Virginia Parole Board's decision to **not grant** parole on October 7, 2023 is based primarily on the following reasons:

- Considering your offense and your institutional records, the Board concludes that you should serve more of your sentence before being paroled.

- Serious nature and circumstances of your offense(s).

- Release at this time would diminish seriousness of crime

- Other
  Board reviewed case under juvenile guidelines
- You need to show a longer period of stable adjustment.

While this may not be the answer you hoped for, please continue your hard work. The Parole Board made every effort to balance your rehabilitation needs with the public safety considerations on behalf of the citizens of Virginia.

If you believe that the Board made errors or that there is new or different information not available to the Board when the case was decided, you may request reconsideration of the decision. Requests for reconsideration must be received by the Board within sixty (60) days of the decision date on forms furnished by the Board to the institution; however, please be advised that the the Board will reconsider cases only for specific errors or significant new or different information that was <u>unavailable</u> to the Board when the case was decided.

Sincerely,

By direction of the Virginia Parole Board:

Patricia  West
Chair

Exhibit QA

PB28                    Marcus Ganzie                              12/19/2024



**VIRGINIA PAROLE BOARD**

RECEIVED
DEC 19 2024
BY: email

| **PB28** (CCOP/PBPM) | **APPEAL/RECONSIDERATION OF NOT GRANT DECISION** *If you do not agree with the Virginia Parole Board's denial of your recent request for parole, you may appeal or request reconsideration. A family member or loved one may not petition on your behalf. You may only submit one appeal or request for reconsideration per denial. Documentation previously reviewed or that is available in an inmate's electronic file is not considered new information and will not be reviewed/considered.* |
|---|---|

| Marcus Ganzie | Greensville Correctional Ce | 1041258 |
|---|---|---|
| INMATE NAME *(Last Name, First Name MI.)* | INSTITUTION *(Prison Name)* | VADOC INMATE ID NUMBER *(7 digits)* |

*I request an appeal or reconsideration Virginia Parole Board's decision to deny me parole based on the following reason:*

⬤ *Significant new information not previously reviewed by the Board*

⬤ *Significant error in information or application of policies or procedures*

Virginia Code §§ 53.1- 165(E) and 53.1- 136(2) require that the Board review and decide cases like Mr. Ganzie's based on "demonstrated maturity and rehabilitation and the lesser culpability of juvenile offenders," rather than general rules, policies, and procedures. Additionally, the Virginia Parole Board Policy Manual mandates that the Board must obtain at least three concurrences before deciding whether to grant or to not grant parole. Virginia Parole Board, Policy Manual, § G(1), at 11 (2006). The Board must reconsider Marcus Ganzie's case based on his tremendous "demonstrated maturity," provided in documentation already submitted with the Virginia Parole Board, the Juvenile Decision Structure Grid, and reach a concensus of three parole board members before releasing a decision.

The Virginia Parole Board Policy Manual constitutes the rules and policies of the Board under Virginia Code § 53.1 - 136.1. The Virginia Parole Board Policy Manual stipulates in § G(1) that, "[b]oard decisions to grant or not grant parole shall require the concurrence of no less than three members of the Board," (emphasis added). Virginia Parole Board, Policy Manual, § G(1), at 11 (2006). The Board policy is published under the authority of Virginia Code § 53.1 - 136.1, and therefore cannot be changed without the approval of the legislature and Governor. Virginia Parole Board, Policy Manual, at 1.

The Board's most recent decision in Mr. Ganzie's case on October 21, 2024, only recorded two votes: Not Grants by Mr. Samuel Boone, and Ms. Michelle Dermyer. This practice goes against the Virginia Parole Policy Manual § G(1). We ask that the Board must correct this error and revote on Mr. Ganzie's case in order to meet the policy standards laid out by the Policy Manual.

Most importantly, it is our understadning that the elected Henrico County Commonwealth's Attorney supports a grant for Mr. Ganzie. We ask that the Board reconsider in light of this and Mr. Ganzie's demonstrated rehabilitation, remorse, growth, and maturity.

| 12/19/2024 | X  *Julie C. McConnell* |
|---|---|
| DATE *(MM/DD/YYYY)* | SIGNATURE |

Marcus Ganzie                                    12/19/2024

─────────────────────── DO NOT WRITE BELOW THIS LINE ───────────────────────

**The Virginia Parole Board has carefully reviewed the stated basis of the request for an appeal or reconsideration and concludes:**

◯ There appears to be adequate basis for appeal or reconsideration and your case is being reviewed by the Board. You will be contacted when the investigation is complete.

◯ Other:_____

◉ *Your request for an appeal or reconsideration is not granted because there is not adequate basis for reconsideration based on the following determinations:*

    ◉ there is no significant new information provided

    ◉ the information was considered by the Board at the time of decision-making

    ◉ does not affect the reason(s) you were not granted parole

    ◉ does not show significant error in information or application of policies or procedures

    ◉ Other: _____

Jan. 16, 2025      Chair      *Patricia L. West*
DATE           TITLE           SIGNATURE

## APPEAL OR RECONSIDERATION FORM SUBMISSION INSTRUCTIONS

I. If you do not agree with the Virginia Parole Board's denial of your recent request for parole, you may appeal or request reconsideration. A family member or loved one may not petition on your behalf. An appeal or request for reconsideration will only be considered if you can show that the decision by the Board was in error based on one of the following reasons:

- An error in the information or application of Board policies or procedures, or
- You have significant new information that was not considered by the Board at the time of decision-making.

II. To appeal or request reconsideration your submission must include all relevant information you wish to have considered. All requests must be submitted to the Board within 60 days of the date of the Board's Not Grant Letter. Decisions are made pursuant to the laws governing the Parole Board.

III. You may only submit one appeal or request for reconsideration per denial. Duplicate submissions will not be considered.

IV. Documentation previously reviewed or that is available in an inmate's electronic file is not considered new information and will not be reviewed/considered.

V. Send your request for reconsideration to:

**Virginia Parole Board**
**6900 Atmore Drive**
**Richmond, Virginia 23225**

VI. Please Note: The Board's decision is final.

*Exhibit 2-B*

# RICHMOND
### School of Law™

JEANETTE LIPMAN CHILDREN'S DEFENSE CLINIC                    JULIE E. MCCONNELL, DIRECTOR

December 15, 2024

Hon. Chadwick Dotson
Virginia Parole Board
6900 Atmore Drive
Richmond, Virginia 23225

### Re: Memo in Support of Appeal for Marcus Ganzie, Inmate Number 1041258

Dear Chairman Dotson:

Thank you for taking the time to consider this appeal for Mr. Ganzie's case under the Board's policies and procedures concerning the review of inmates eligible for parole under § 53.1-165.1(E). We respectfully ask that this document be scanned and recorded in Mr. Ganzie's file for current and future consideraition of his case.

The following memorandum is provided in support of the appeal of the Board's no-grant decision filed on behalf of Mr. Marcus Gaznie, inmate 1041258, certified on October 21, 2024. We provide the following:

### I.    APPLICABLE LAW

Based on a review of the Board's policies and procedures, as well as applicable law, it appears the only way to reverse a Grant decision would be through the revocation process, including a hearing on the issue. All the statutes and rules reviewed pertaining to the revocation process appear to require either a violation of law, breach of a term of release, or other problematic behavior, along with a subsequent hearing. There do not appear to be any mechanisms to reverse a grant decision based on improper application of policies and procedures.

For those who were turned down, they are afforded a sixty (60) day appeal window. Once that window closes, the decision is final, as is any decision following appeal. Thus, a finding that the Board improperly decided past cases is not likely to have significant repercussions, beyond those cases that have been properly and timely appealed and asserted this issue.

This letter and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, any reading, dissemination, distribution, copying, or other use of this letter or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy this letter and all copies and backups thereof. Thank you.

203 Richmond Way • University of Richmond, Virginia 23173 • (804) 289-8921

## II.    REASONS FOR RECONSIDERATION

Our position has two components:

(1) The Board has significantly misapplied its policies and procedures by failing to review and decide his case in accordance with the Va. Code § 53.1-165.1(E), and 55.3-155(A).

(2) The Board has violated the Virginia Parole Board Policy Manual.

### A.    *Failure to review and decide the Mr. Ganzie's case in accordance with Va. Code § 53.1 – 165.1(E) and § 53.1 – 136(2).*

According to Virginia Code § 53.1 – 165.1(E), "the Board shall review and decide the case of each prisoner who is eligible for parole in accordance with § 53.1 – 154 and rules adopted pursuant to subdivision 2 of 53.1 – 136." The Board, in this case, only reviewed Mr. Ganzie's case under the juvenile guidelines and did not decide the case "based on demonstrated growth and maturity." Va. Code §§ 53.1 – 136(2); 53.1 – 165.1.

The Board lists "[o]ther; reviewed case under juvenile guidelines" as one of the reasons for denying Mr. Ganzie's parole. The juvenile guidelines are formatted in a decision structure "to provide the Parole Board with a context to assist and support Parole decisions for juvenile offenders under Virginia Code § 53.1 – 165.1."

Mr. Ganzie's August 5, 2024, Juvenile Decision Grid listed and checked off the following guidelines:

      (a) Individual Risk Factors
           (i) No previous criminal history
           (ii) History of substance use.
      (b) Environmental Risk Factors
           (i) Family history of violence/conflict.
           (ii) Poor parent/child relationships.
           (iii) History of school suspensions.
           (iv) Negative peers.
           (v) Parent formally incarcerated.
      (c) Institutional Adjustment
           (i) No infractions within last 24 months.
           (ii) Absence of infractions.
      (d) Programming
           (i) Completed required programming.
           (ii) Actively sought more programming.
           (iii) COMPAS factors continue to be relevant.
      (e) Home Plan
           (i) Has a re-entry plan.
           (ii) Resolution of familial stress.
           (iii) Suitable housing.

2

The Board must re-review and decide his case based on his demonstrated maturity and rehabilitation and in light of the lesser culpability of juvenile offenders, pursuant to §53.1-136(2), and that those factors should be evaluated in a manner consistent with the origins of those terms in *Roper v. Simmons,* 543 U.S. 551 (2005), *Miller v. Alabama,* 132 S. Ct. 2455 (2012), *Graham v. Florida*, 560 U.S. 48 (2010) and *Montogomery v. Louisiana,* 136 S. Ct. 718, 734.

### B. The Board has violated the Virginia Parole Board Policy Manual.

The Virginia Parole Board Policy Manual constitutes the rules and policies of the Board under Virginia Code § 53.1 – 136.1. The Virginia Parole Board Policy Manual stipulates in § G(1) that, "[b]oard decisions to grant or not grant parole <u>shall require the concurrence of no less than three members of the Board,</u>" (emphasis added). *Virginia Parole Board*, Policy Manual, § G(1), at 11 (2006). The Board policy is published under the authority of Virginia Code § 53.1 – 136.1, and therefore cannot be changed without the approval of the legislature and Governor. *Virginia Parole Board,* Policy Manual, at 1.

The Board's most recent decision in Mr. Ganzie's case on October 21, 2024, only recorded two votes: Not Grants by Mr. Samuel Boone, and Ms. Michelle Dermyer.[1] This practice goes against the Virginia Parole Policy Manual § G(1). The Board must correct this error and revote on Mr. Ganzie's case in order to meet the policy standards laid out by the Policy Manual.

| | 1041258 Ganzie, Marcus | Discretionary Parole | 10/21/2024 | Not Grant | 10/22/2024 | 48 Male | Black | Other: Release at this time would diminish seriousness of crime; The Board concludes that you should serve more of your sentence prior to release on parole. | 30yr 0mo 22d | Henrico Circuit | Homicide-1st Degree | 5/25/1995 Life |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 71 | | | | | | | | | | | | |
| 72 | | | | | | | | | | Henrico Circuit | Use Of Firearm In Felony | 5/25/1995 3yr 0mo 0d |
| 73 | | | | | | | | | | Henrico Circuit | Robbery | 5/25/1995 20yr 0mo 0d |
| 74 | | | | | | | | | | Henrico Circuit | Use Of Firearm In Felony | 5/25/1995 5yr 0mo 0d |
| 75 | | | | | | | | | | Henrico Circuit | Homicide-1st Degree | 5/25/1995 40yr 40mo 0d |
| 76 | | | | | | | | | | Henrico Circuit | Use Of Firearm In Felony | 5/25/1995 5yr 0mo 0d |
| | <u>Parole Board Members Votes</u> Boone, Samuel- Not Grant Dermyer, Michelle- Not Grant | | | | | | | | | | | |
| 77 | | | | | | | | | | | | |

## III.  CONCLUSION

Virginia Code §§ 53.1- 165(E) and 53.1- 136(2) require that the Board review and decide cases like Mr. Ganzie's based on "demonstrated maturity and rehabilitation and the lesser culpability of juvenile offenders," rather than general rules, policies, and procedures. Additionally, the Virginia Parole Board Policy Manual mandates that the Board must obtain at least three concurrences before deciding whether to grant or not grant parole. *Virginia Parole Board*, Policy Manual, § G(1), at 11 (2006). The Board must reconsider Marcus Ganzie's case based on his tremendous "demonstrated maturity," provided in documentation already submitted with the Virginia Parole Board, the Juvenile Decision Structure Grid, and reach a consensus of three parole board members before releasing a decision.

---

[1] *Virginia Parole Board*, Marcus Ganzie Parole Decisions 2020-2024, (Oct. 21, 2024) (FOIA).

Sincerely,

Julie E. McConnell, Esquire (VSB #44327)
Director, Children's Defense Clinic
University of Richmond Children's Defense Clinic
203 Richmond Way
Richmond, Virginia 23173
Phone: 804-893-0885.
Email: jmcconne@richmond.edu

Rita Orozco
*Certified Third Year Law Student*

4




OFFICE OF THE
## COMMONWEALTH'S ATTORNEY FOR HENRICO COUNTY

Shannon L. Taylor
Commonwealth's Attorney

December 20, 2024

Investigator Colleen Maxwell
Virginia Parole Board
6900 Atmore Drive
Richmond, Virginia 23225

Re. Marcus Ganzie, DOC # 1041258

Dear Investigator Maxwell,

I had been contacted by the University of Richmond Law School Children's Defense Clinic back in March 2024. At that time, they asked to discuss the parole status of Marcus Ganzie. I was unaware of whether his file had been sent to me per the Board's procedure, but I reached out to Inv. Davis to inquire if he had in fact sent it to me. Inv. Davis mentioned that he had sent the notify to me in August 2023, and that I had not replied. I did have recollection of receiving information on the co-defendant Paul Peyton.

The Clinic reached out to me again in early November 2024, and I reached out to you on November 20, 2024, asking about whether or not I would be receiving a notice. You explained that Mr. Ganzie was up for parole consideration in September and was denied (vote was certified in late October), and that Mr. Ganzie will be considered again next year (2025). I informed the Clinic about this posture, and they stated that they would be starting on the next stage soon; they further asked if I would state my position since I had never given the Board a position.

By way of this letter, I would like to point out certain factors:

- Marcus was 17 years old when the offense was committed.
- Marcus was not the triggerman but was an active principal in the second-degree.
- Marcus did not get the benefit of Department of Juvenile Justice and went straight into the Department of Corrections.
- He has served 30 plus years for this offense, which is not an insignificant amount of time.
- He has a supportive family which attributes to a successful transition.
- He is identified as low recidivism risk.

4309 East Parham Road, Henrico, Virginia 23228 ~ P.O. Box 90775, Henrico, Virginia 23273-0775
Telephone: (804) 501-4218 ~ Fax: (804) 501-4110 or 5028
Juvenile & Domestic Div.: (804) 501-4338 ~ Victim/Witness Program: (804) 501-1680
Website: www.henrico.us/com-atty

*5*

- He had one juvenile contact other than the present offense for an assault at school which was diverted in Henrico Juvenile Court.
- Since his incarceration, Marcus has tested negative in all of his 61 drug screens; he has no gang related activity noted or identified.
- He has had minimal infractions, and the last one was 2018.
- He has been constantly involved in DOC programs.
- He does have a substance use disorder diagnosis, and it is not clear whether he has been receiving treatment at this time.

I am aware that the family of Ms. Breeden was, and I have to assume, is still opposing the release of this offender, but I do think that Mr. Ganzie can be distinguished from the triggerman, Mr. Peyton.

As I have said before, the Parole review process is the focus on the progress of the offender and the facts of the case are but one of the factors. If the Board were concerned about the substance use disorder, that could be a condition for Mr. Ganzie to participate in a program while engaged in re-entry process.

I realize that the timing of this letter is premature but will be placed into Mr. Ganzie's file for when the matter is reviewed next time. As always, please feel free to contact me if there should be any questions.

Sincerely,

Shannon Taylor
Commonwealth's Attorney for Henrico County


Cc: Professor Julie E. McConnell, Director of the University of Richmond Law School's Children's Defense Clinic

3—401

Exhibit 3



## *COMMONWEALTH OF VIRGINIA*

*Virginia Parole Board*
*6900 Atmore Drive*
*Richmond, Virginia 23225*
*V/TDD (804) 674-3081*
*FAX (804) 674-3284*

**Certified On :** October 22, 2024

Ganzie, Marcus, DOC# 1041258

Greensville Correctional Center
901 Corrections Way
Jarratt, Virginia 23870-9998

Dear Marcus Ganzie:

The Virginia Parole Board recently reviewed your case for potential release on discretionary parole. As you know, the goal of the Parole Board is to release on parole those eligible offenders deemed suitable for release and whose release will be compatible with the welfare of society and the offender.

The Board, in determining whether you should be released on parole, considered a number of factors, including, but not limited to, whether your release would be compatible with public safety and the mutual interests of society and you; whether your character, conduct, vocational training and other developmental activities during incarceration reflect the probability that you will lead a law-abiding life in the community and live up to all conditions of parole, if released; sentencing information; facts and circumstances of the offense(s) including mitigating and aggravating factors; prior criminal history and information regarding adjustment to previous probation or parole, if any; personal history; institutional adjustment such as your response to available programs; changes in attitude toward self and others; release plans; evaluations; impressions gained when interviewed by the parole examiner; and any other information provided by your attorney, family, victims or other persons.

In accordance with Code Section 53.1-155 and in consideration of the factors listed above and the information available to us, the Virginia Parole Board's decision to **not grant** parole on October 21, 2024 is based primarily on the following reasons:

- Release at this time would diminish seriousness of crime

- The Board concludes that you should serve more of your sentence prior to release on parole.

- Other
  Board reviewed case under juvenile guidelines.

While this may not be the answer you hoped for, please continue your hard work. The Parole Board made every effort to balance your rehabilitation needs with the public safety considerations on behalf of the citizens of Virginia.

If you believe that the Board made errors or that there is new or different information not available to the Board when the case was decided, you may request reconsideration of the decision. Requests for reconsideration must be received by the Board within sixty (60) days of the decision date on forms furnished by the Board to the institution; however, please be advised that the Board will reconsider cases only for specific errors or significant new or different information that was <u>unavailable</u> to the Board when the case was decided.

Sincerely,

By direction of the Virginia Parole Board:

Patricia West
Chair

Exhibit 4

## VIRGINIA NEWS

# Attorney General Jason Miyares releases full report on Virginia Parole Board investigation

by: Delaney Murray, Jackie DeFusco
Posted: Jan 25, 2023 / 02:44 PM EST
Updated: Jan 25, 2023 / 07:42 PM EST

RICHMOND, Va. (WRIC) –Attorney General Jason Miyares released a 69-page report on Wednesday unpacking scathing allegations against the former Virginia Parole Board after a year-long investigation, but he said it's too late to charge the chairwoman at the center of the controversy.

Governor Glenn Youngkin asked for the probe in one of his day one executive orders, which also fired and replaced every member of the board that served under former Governor Ralph Northam.

"The answers we found in this Parole Board investigation were actually worse than we thought," Miyares said during a press conference before detailing his office's findings for the first time. "What happened here was wrong, what happened here was a clear abuse of power. What happened here was the epitome of putting criminals first and victims last."

The investigation focused primarily on the Parole Board's activities in March and April of 2020. The report describes a "chaotic atmosphere" during this time as the pace of parole grants was "drastically accelerated."

Miyares said a "parole granting frenzy" endangered public safety and resulted in the early release of 134 inmates–130 of whom had been convicted of violent crimes, including murder, armed robbery and rape.

Over the two-month period, Miyares said the board failed to properly notify victims while weighing the early release of inmates 83 times and disregarded prosecutors 66 times. He said the board's failure to adequately engage those parties violated state law and their own internal policies.

The investigation largely blames former Parole Board Chair Adrianne Bennett, who now serves as a judge for the 2nd Judicial District Juvenile & Domestic Relations District Court in Virginia Beach.

Ms. Vanessa Price
604 Steeplechase Dr.
Johnson City, TN 37601



KNOXVILLE TN 377

18 JUL 2024    PM 2 L

Marcus Ganzie 1041258
Greensville correctional ctr.
901 Corrections way
Jarratt, VA    23870

3-401



*Exhibit 15*

For example, Miyares said Bennett unilaterally cut 137 violent offenders loose from community supervision prematurely and falsified records in the process.

"If there were no statute of limitations, Chair Bennett could be charged criminally for falsifying official records and violating court orders," Miyares said.

Miyares also accused Bennett of ignoring the limits of Virginia's "three strikes" law for parole ineligibility and overstepping her authority, even after a top Northam administration official reportedly advised against it.

"As a result, she allowed multiple serial rapists to actually become parole eligible," Miyares said.

Former Secretary of Public Safety Brian Moran, who was cited in the report, didn't immediately respond to a request for comment, nor did Northam's Chief of Staff Clark Mercer.

A law firm representing Judge Bennett responded in a statement on Wednesday evening.

"The Office of Attorney General has cherry picked a time period for scrutiny which happens to have taken place during a once-in-a-lifetime pandemic. In all cases of parole, Judge Bennett was but one vote of the board," wrote attorney Diana Toscano. "This report grossly targeted her. Judge Bennett is a dedicated public servant who has served with distinction on the bench, on the parole board, and as a respected attorney in the Virginia Beach legal community for decades. No attempt to vilify her changes that."

Miyares said all of Bennett's emails from her time as chairwoman have been deleted, leaving some questions unanswered. He said Virginia's law on destruction of public records isn't strong enough to pursue charges.

However, Miyares said the General Assembly could try to impeach Bennett from the bench in Virginia Beach.

In a statement, Senate Republican Leader Tommy Norment said he is "respectfully asking Judge Bennett to avoid legislative action regarding her status by immediately submitting her resignation from the bench."

Norment added that the General Assembly should act on the Attorney General's other recommendations for legislative action as soon as possible. The report details various reforms addressing ethics, transparency and victim notification.

"The reckless and deliberate disregard for the Code, and for the Parole Board's own policies and procedures, ranks among the most outrageous conduct by government officials I have seen in my three decades of service," Norment furthered.



## Virginia Parole Board Investigation

### FACT SHEET:

- The Attorney General conducted a thorough investigation of the Virginia Parole Board pursuant to the authority granted to him by Governor Youngkin's Executive Order 3 on January 15, 2022.

- A summary of the findings from the OAG investigation are contained in a 69-page report with supporting appendixes.

- The OAG investigation focused primarily on the Parole Board's activities in March and April 2020, during the period that the pace of parole grants was drastically accelerated.

- In 2020, the Virginia Parole Board's actions came under elevated public scrutiny after it released 95 offenders in March 2020 – the highest number of releases ever granted in a single month.

- The 95 offenders released in March 2020 included:
  - 4 capital murderers
  - 31 first degree murderers
  - 11 rapists
  - 33 offenders convicted of robbery

- Of the 134 offenders released between March 2020 and April 2020, 130 of them were convicted of violent crimes. Only four were non-violent.

- These offenders were not released due to COVID-19 and the Parole Board was not given authority to release offenders due to the pandemic.  Instead, they were released due to the traceable actions of one person: then Parole Board Chair Adrianne Bennett.  Bennett is now a judge for the 2nd Judicial District Juvenile &

1

*Exhibit*

Domestic Relations District Court in Virginia Beach, Virginia.

- The OAG report identifies three main areas in which the Parole Board failed to comply with Virginia law and its own policies/procedures:
  - (1) Release/Parole decisions were made with disregard for statutory rights of victims;
  - (2) Chair Bennett's April 2020 release of 137 parolees from supervision violated multiple laws, policies, and procedures;
  - (3) hundreds of offenders were given parole eligibility in violation of multiple Virginia laws and procedures.

- Victims were systematically ignored, disregarded, and silenced.
  - The board violated the mandate to "endeavor diligently" to contact victims **83 times** in a two-month period.
    - The Parole Board failed to notify families that the offenders who murdered, raped, and robbed their loved ones were going to be granted parole. Victims were not granted the opportunity to speak at parole hearings.

      - For example, the case of Vincent Martin, who murdered Richmond police officer Michael Connors and whose release generated coverage from local media, had 528 instances of victim opposition to his release from 39 different VA localities and 9 different states. VPB policy and procedure allowed for his parole to be rescinded based on significant victim opposition, but no action was taken.
      - Hugh Brown was sentenced to life in prison for shooting his pregnant girlfriend to death and setting her body on fire. Chair Bennett called his crime "sociopathic" in 2018 and he was denied parole in March 2020, but Chair Bennett ensured he received an "extra review" in April for his release. She ordered staff to stop the victim notification system from alerting the victims.

  - The board failed to properly notify local Commonwealth's Attorneys of its release decisions **66 times** during this period.

  - The Bennett board rarely initiated victim research and efforts to contact victims until at least some of the members had voted in favor of release. In many cases, victim research/contact only began after an offender had received *all* necessary votes for release. In some cases, the board attempted no victim contact whatsoever.

- Chair Bennett unilaterally discharged 137 violent offenders from parole supervision in her final days with the board – most of whom were convicted of capital or first-degree murder.

    - 70% of these early discharges were convicted of murder,
    - 10% multiple murders/manslaughter,
    - 7% single capital murder,
    - 52% single first degree murder
    - The average sentence per offender given early discharge was 104.14 years – life plus 28.

- Chair Bennett falsified three parole discharge records for three first-degree murderers in violation of 18.2-472.  Virginia law prohibits government officials from making false or fraudulent entries in official records.  These violations of the law cannot be criminally prosecuted because of the applicable statute of limitations has lapsed.

- Chair Bennett unlawfully suspended Virginia's "three strikes" parole ineligibility statute (Va. Code 53.1-151(B1)).  Bennett sought approval for her new, lenient interpretation, but the approval was rejected by Secretary of Public Safety & Homeland Security Brian Moran.  Bennett sought a legislative change to support her interpretation, but the legislature failed to revise the statute.  Notwithstanding, Bennett implemented the change anyway.  The unauthorized implementation of the lenient policy resulted in parole eligibility for multiple serial rapists previously deemed parole-ineligible.

- Chair Bennett committed 111 violations of the Parole Board policy manual for failing to obey the requirement that parolees be on supervision for 5 years and be recommended by a parole officer first before early discharge can be granted.

- After she became a judge, Chair Bennett committed one violation of the Virginia Canons of Judicial Conduct when she continued to transact the business of the Parole Board after taking the bench.

- Chair Bennett violated eight court orders finding offenders were ineligible for discretionary parole. These violations of the law cannot be criminally prosecuted because of the applicable statute of limitations has lapsed.

- Under Chair Bennett's direction, VPB released **over 50 violent offenders** in March and April 2020 **whom parole examiners had recommended against releasing** because they were ***still*** a danger to the community.

Exhibit 4

- Chair Bennett's actions specifically enabled offenders to re-victimize more than ten innocent Virginians.
  - o Example: Bennett's unlawful restoration of David Simpkins' parole eligibility directly enabled Simpkins to commit 15 new violent felonies.

- Former Attorney General Herring's administration made no attempt to publicly or privately correct the Parole Board's widespread noncompliance with the law. Herring took no court action. In the aftermath of the OSIG reports, Herring's office acted as the Parole Board's publicist by helping the Board respond to negative media coverage, but never counseling the Board to correct illegal actions.

- The report also makes 20 specific policy and legislative recommendations to ensure transparency of the Virginia Parole Board's actions to restore confidence and integrity in the criminal justice system. The recommendations include:
  - o Enhanced ethics rules for Parole Board members;
  - o Stronger victim notification requirements;
  - o Increasing the size and public transparency of the Parole Board; and
  - o Amending multiple sections of the Virginia Code to better guide the work of the Parole Board.



Exhibit 5

| | Marcus Ganzie | Dwayne Jones | James Carmack | Jason Contreras | Shontel Cradle | Skyy Lorenzo Reese |
|---|---|---|---|---|---|---|
| Age | 17 | 17 | 19 | 16 | 17 | 16 |
| Conviction | - 1st degree homicide x2<br>- Robbery x2<br>- Use of firearm/felony x2 | - 1st degree homicide<br>- Use of firearm/felony | - 1st degree homicide<br>- Use of firearm/felony<br>- Robbery | - 1st degree homicide<br>- Statutory Burglary x4<br>- Robbery x3<br>- Attempted robbery<br>- Use of firearm/felony x5 | - Robbery x3 | - Abduction<br>- Malicious wounding<br>- Use of firearm/felony x4<br>- Robbery (Conspiracy)x4<br>- Robbery x4 |
| Time Served | 28 years | 24 years, 10 months | 24 years, 11 months | 24 years, 11 months | 23 years, 9 months | 21 years, 2 months |
| Positive Qualities | | Released due to age at the time of the offense; release is compatible with public safety | Released due to age at the time of the offense; 24 months infraction free; release is compatible with public safety; successful participation in correctional and vocational programs | Released due to age at the time of the offense; 24 months infraction free; demonstrated rehabilitation | Released due to age at the time of the offense; 24 months infraction free; successful participation in correctional and vocational programs; demonstrated rehabilitation; excessive sentence | Released due to age at the time of the offense; excellent institutional adjustment; stable release plan; 24 months infraction free; successful participation in correctional and vocational programs; demonstrated rehabilitation |

*Green text indicates that Mr. Ganzie has a data point that is the same or better in demonstrating good candidacy for release; red text indicates that Mr. Ganzie has a data point that is worse. Black text indicates a data point that is different but not comparable.

**B. Mr. Ganzie's Age and Experience at the Time of the Offense Make Him Less Culpable, and Developmentally and "Constitutionally Different" Than an Adult.**

Mr. Ganzie's co-defendant in this case was an adult. The Supreme Court of the United States has continually held that juveniles' culpability in criminal matters differs from adults, and that juveniles "are

7

constitutionally different from adults for the purposes of sentencing." *Miller v. Alabama*, 567 U.S. 460, 471 (2012). This includes their (1) "lack of maturity and underdeveloped sense of responsibility" which leads to "recklessness and impulsivity," (2) heightened susceptibility "to negative influences and outside pressures" limiting their ability to "extricate themselves" from "their own environment," and (3) possessing less well-formed character traits so their "actions are less likely" to be the result of "irretrievable depravity." *Miller*, 567 U.S. at 471 (citing *Roper v. Simmons*, 543 U.S. 551, 569-570 (2005)). Over, are the days where "the prosecutor[s] argue[]...youth is aggravating rather than mitigating." *Roper*, 543 U.S. at 573.

Psychology and neuroscience "continue to show fundamental differences between juvenile and adult minds in...parts of the brain involved in behavior control." *Graham v. Florida*, 560 U.S. 48 at 68 (2010). This lack of brain development, in turn, leads to "rashness," "risk," and "inability to assess consequences." *Miller*, 567 U.S. at 472.

### C. Mr. Ganzie was not the Triggerman in this Offense and Did Not Possess a Gun During the Crime.

Mr. Ganzie was seventeen years old at the time of this offense and had never been convicted of either a juvenile delinquency matter or a criminal act prior to this incident. Regardless, Mr. Ganzie was convicted as an adult and went straight into the adult correctional system. He never had the benefit of the rehabilitative services and programs of the juvenile justice system. He had to find his path to rehabilitation in prison. As he matured and his brain fully developed, he realized that furthering his education, working, and nurturing relationships in the community, were his path to success. Mr. Ganzie has fully embraced those opportunities and has served 28 hard years for this crime. Especially given that he was only 17 at the time, and has grown up in prison, he has been held accountable for his role in this crime. Mr. Ganzie is in a strong position now to no longer be a threat to the community, and indeed, to live a quiet life at his mother's home and to make a positive contribution as a tax-paying employee with the SDB Trucking company.

During the actual crime, Mr. Ganzie's co-defendant was the only one of them who carried a weapon, and he was the one that actually shot the two victims. Mr. Ganzie, however, fully accepts responsibility for his role in these crimes and understands that even though he did not carry a weapon or pull the trigger, he is still responsible for the deaths of Terry Smith and Angela Breeden. He has had every day of the last 28 years to think about what he would do differently today to prevent this tragedy. Mr. Ganzie pled guilty, without a plea agreement, to all of the charges and accepted responsibility for his role in the offenses. He has regretted the terrible harm he caused every day since, but especially as he got older and understood more the gravity of what he and his co-defendant had done.

8

*2023*    *Exhibit*

Mr. Ganzie was a juvenile at the time of the offense, and the board has rightfully recognized through parole grants that age at the time of the offense is particularly important in making a fair decision for each candidate. The Supreme Court of the United States has continually held that juveniles' culpability in criminal matters differs from adults and that juveniles "are constitutionally different from adults for the purposes of sentencing." *Miller v. Alabama*, 567 U.S. 460, 471 (2012). This includes their (1) "lack of maturity and underdeveloped sense of responsibility," which leads to "recklessness and impulsivity," (2) heightened susceptibility "to negative influences and outside pressures" limiting their ability to "extricate themselves" from "their own environment," and (3) possessing less well-formed character traits so their "actions are less likely" to be the result of "irretrievable depravity." *Miller*, 567 U.S. at 471 (citing *Roper v. Simmons*, 543 U.S. 551, 569-570 (2005)). Over, are the days where "the prosecutor[s] argue[]...youth is aggravating rather than mitigating." *Roper*, 543 U.S. at 573. Psychology and neuroscience "continue to show fundamental differences between juvenile and adult minds in…parts of the brain involved in behavior control." *Graham v. Florida*, 560 U.S. 48 at 68 (2010). This lack of brain development, in turn, leads to "rashness," "risk," and "inability to assess consequences." *Miller*, 567 U.S. at 472.

Mr. Ganzie has served thirty years for his offense and is an optimal candidate for a successful release. The chart below provides an illustrated example comparing data from parolees from September 2023 to February 2024 with Mr. Ganzie. These individuals have comparable convictions, ages, and time served.

| Parole Decision Comparison Chart | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Marcus Ganzie** | Leroy Gilliam III | Horace Burnette | Carl Blaine | Paris Whedbee | David Simpson | Marvin Mundy | Rodney Clark |
| Decision Date | | February 9, 2024 | September 22, 2023 | February 1, 2024 | February 9, 2024 | October 20, 2023 | September 8, 2023 | August 4, 2023 |
| Age at Time of Offense | 17 | 23 | 20 | 17 | 34 | 17 | 23 | 26 |
| Conviction | 1st degree homicide x2 Robbery x2 Use of firearm in felony x2 Perjury | 1st degree homicide Use of firearm in felony Felon in possession of firearm Violation drug control act | Robbery x8 Unlawful wounding | 1st degree homicide Attempted robbery Use of firearm in felony x2 Brandishing firearm Accessory after fact in felony | Bank Robbery x2 Robbery x6 Use of firearm in felony x2 Attempted robbery x2 Obstructing Justice | Robbery x6 Malicious Wounding Use of firearm in felony x6 Carjacking | 1st Degree Homicide Agg Murder: Robbery Use of firearm felony x3 Assualt and battery Trespassing | 1st Degree Homicide Use of firearm in felony x3 Malicious wounding Robbery Bad Checks x2 Possession of cocaine Contempt of court x2 Jail delivery of drugs to prisoner |
| Time Served | **30 years** | 28 years | 31 years | 26 years | 27 years | 26 years | 36 years | 26 years |
| Released due to: | ✓ Stable release plan ✓ Demonstrated rehabilitation ✓ Successful participation in correctional and vocational programs ✓ Release compatible with public safety ✓ Infraction free for at least the last 24 months ✓ Age at the time of the offense ✓ Excellent institutional adjustment ✓ Significant community support | ✓ Stable release plan ✓ Demonstrated rehabilitation ✓ Release is compatible with public safety ✓ Infraction free for at least the last 24 months ✓ Excellent institutional adjustment | ✓ Stable release plan ✓ Release is compatible with public safety | ✓ Infraction free for at least the last 24 months ✓ Age at the time of the offense ✓ Successful participation in correctional and vocational programs ✓ Stable release plan ✓ Demonstrated rehabilitation ✓ Release is compatible with public safety | ✓ Successful participation in correctional and vocational programs ✓ Infraction free since incarceration ✓ Demonstrated rehabilitation ✓ Release is compatible with public safety ✓ Excellent institutional adjustment ✓ Stable release plan | ✓ Stable release plan ✓ Successful participation in correctional and vocational programs ✓ Age at the time of the offense ✓ Release is compatible with public safety ✓ Infraction free for at least the last 24 months | ✓ Demonstrated rehabilitation ✓ Successful participation in correctional and vocational programs ✓ Release is compatible with public safety ✓ Stable release plan ✓ Significant community support ✓ Infraction free for at least the last 24 months | ✓ Release is compatible with public safety ✓ Demonstrated rehabilitation ✓ Significant community support ✓ Infraction free for at least the last 24 months ✓ Stable release plan ✓ Excellent institutional adjustment |

***Green text indicates that Mr. Ganzie has a data point that is the same or better in demonstrating good candidacy for release, red text indicates the data point is not as good, and black text indicates the data is not comparable.

Exhibit 7

## DECLARATION

I, Curtis Ray Brooks, hereby declare and swear under penalty of perjury, pursuant to Code of Virginia § 18-2-434, that:

1. I have been going up for parole for fourteen (14) straight years. (June 10, 2010 through March 20, 2024)

2. Since 2023 I have been having to receive 100% votes for a parole GRANT decision due to the Governor Youngkin's inaction on the appointment of a 5th Virginia Parole Board Member, and

3. I find it unfair that I have a double life-sentence and have to receive 100% votes for aprole release while others prisoners without life sentence (with or without violent offenses), are only required to receive approximately 65% of the Virginia Parole Board votes for a GRANT decision.

I, Curtis Ray Brooks, on this 17th day of July, 2024, hereby swear under the penalty of perjury, pursuant to Code of Virginia § 18.2-434, that the foregoing is true & correct to the best of my knowledge and belief.

Sincerely,

s/ Curtis Ray Brooks #1003943

VA DOC C. M. D. C.
3521 Woods Way
State Farm, Virginia 23160



## DECLARTION

I Timothy A. Dennis Declare and swear under the penalty of perjury that:

(1) I got locked up in 1987 and was 17yrs. (Juvenile)

(2) I've been going up for parole for years

(3) when I was denied Parole 2022. The Parole Board never stated Based on the juvenile statutory mandate.

(4) when I was denied parole in. 2023. it was Never based on the juvenile Statutory mandate.

(5) Since 2023 I have been having to get 100% grant votes due to the governor inaction on the oppaintment of a 5th member.

(6) It has been unfair that because I have a life sentence, I have to get 100% and others without life dont

signature: _____ #1050928

Date: 7-17-24

# DECLARATION

Exhibit

I, LEETRELL TYESHAWN MYLES, HEREBY DECLARE AND SWEAR UNDER PENALTY OF PERJURY, PURSUANT TO CODE OF VIRGINIA § 18-2-434, THAT:

1. I HAVE BEEN GOING UP FOR PAROLE FOR 4 STRAIGHT YEARS, "SEPTEMBER 2020 THROUGH AUGUST 2024"

2. SINCE 2023 I HAVE BEEN HAVING TO RECIEVE 80% VOTES FOR A PAROLE GRANT DECISION DUE TO GOVERNOR YOUNGKIN'S INACTION ON THE APPOINTMENT OF A 5TH VIRGINIA PAROLE MEMBER, AND

3. I FIND IT UNFAIR THAT I HAVE A 90 YEAR SENTENCE AND HAVE TO RECIEVE 80% OF THE VOTES FOR A PAROLE RELEASE WHILE THE LAW IN VIRGINIA STATES. PRISONERS NOT SERVING LIFE SENTENCES "WITH OR WITHOUT VIOLENT CRIMES" ARE ONLY REQUIRED TO RECIEVE APPROXIMATELY 65% OF THE VIRGINIA PAROLE BOARD VOTES FOR A GRANT DECISION.

I, LEETRELL TYESHAWN MYLES, ON THIS DAY ___ OF ___, 202_ HEREBY SWEAR UNDER PENALTY OF PERJURY, PURSUANT TO CODE OF VIRGINIA § 18.2-434, THAT THE FOREGOING IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

SINCERELY, _____

LEETRELL TYESHAWN MYLES #1108847
GREENSVILLE CORRECTIONAL CENTER
901 CORRECTIONS WAY
JARRATT, VIRGINIA.